*Decision will be entered under Rule 50.*

LAURA E. HUFFMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

M. D. HUFFMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NINA H. TERRILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 90801, 90802, 90803. Promulgated May 17, 1939.

*Thomas R. Dempsey*, *Esq.*, and *Arthur McGregor*, *Esq.*, for the petitioners.

*E. A. Tonjes*, *Esq.*, for the respondent.

OPINION.

Van Fossan: The parties agree that the disposition of the cases at bar turns on the question of whether or not the persons who are vested by the trust agreement with the power to amend, in whole or in part, to revoke, and to terminate the trust, have a substantial adverse interest.[1]

The provisions of the three trust agreements are essentially the same, varying only in the designation of the person or persons who are given the right to amend, revoke, and terminate, and those persons bear a substantially similar family relationship to the grantors. Therefore, we shall confine our discussion to the material provisions of the M. D. Huffman trust and our conclusion will be equally pertinent to the Laura E. Huffman and the Nina H. Terrill trusts.

---

[1] SEC. 166. REVOCABLE TRUSTS. [Revenue Act of 1932.]

Where at any time during the taxable year the power to revest in the grantor title to any part of the corpus of the trust is vested—

> (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or
> (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

> (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or
> (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or
> \*    \*    \*    \*    \*    \*    \*

then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."

The M. D. Huffman trust irrevocably transfers a certain interest in an oil and gas lease to a trust company as trustee. The trust grants rather broad powers to the trustee in the management, acquisition, and conversion of the corpus. It prohibits distribution of income during the period of a possible appeal from and final adjudication of a judgment rendered in favor of the grantor and others, defendants, in the Superior Court of Fresno County, California. An appeal was taken and the final adjudication was not made until May 7, 1934. Thus, no distributions provided by the trust were made to the grantors, as hereinafter mentioned.

The trust provided that after the termination of the appeal the trustee should pay certain costs, expenses of management, etc., and then distribute to the grantor $500 per month and accumulate the excess as "accumulations of net income" in a fund which might be invaded if the current income of the trust were not sufficient to make the specified monthly payments to the grantor. After the grantor's death all net income shall be accumulated.

The right and power to amend, in whole or in part, and fully to terminate or revoke were reserved and vested in Milton W. Terrill with the written consent of either Leona H. Hobson or Nina H. Terrill or, if they be dead, upon his own direction. After the death of Terrill similar rights and powers were vested in Mrs. Hobson and Mrs. Terrill and the survivor of them with the written consent of C. H. Hartke, or, if he be dead, upon the direction of Mrs. Hobson and Mrs. Terrill or the survivor. The trust instrument provided, however, that no amendment, termination, or revocation relating only to the accumulation of net income should be made prior to the final adjudication of the appeal.

Unless sooner terminated by operation of the powers so granted, the trust was to cease upon the death of the last survivor of M. D. Huffman, Laura E. Huffman, Leona H. Hobson, Nina H. Terrill, and Milton W. Terrill; whereupon the entire net trust estate would vest in the grantor's heirs at law.

The accumulation or distribution of the trust income is not subject to the discretion of the grantor or to anyone not having a substantial adverse interest in its disposition. Therefore, that factor is eliminated from consideration. The distribution of $500 per month to the grantor was held in abeyance pending the settlement of the appeal case. If and when that case were adjudicated (an event which occurred on May 7, 1934), that sum was properly and admittedly distributable and taxable to the grantor. (Sec. 167 (a) (1).)

The power of amendment, termination, and revocation includes the power to revest title to the corpus in the grantor. That power is lodged in Terrill. The question for determination, therefore, is, Did

he have a substantial adverse interest in the disposition of the trust corpus or income? On consideration of the trust instrument we have no doubt that he did.

In the first place, Terrill is one of the heirs at law of the grantor. The respondent argues that he has no interest in the grantor's trust estate because the trust will not terminate until the death of all five of the persons mentioned, including himself, and, therefore, he can not be the recipient of the trust property. The respondent states that the only other method of terminating the trust is by revocation. If revoked during the trustor's life, the trustor would reacquire the corpus; if revoked after trustor's death the corpus would go to the heirs, who during 1932 were Terrill, his mother, and his aunt. The respondent asserts that the "remote possibility" of Terrill receiving the trust property does not constitute a substantial adverse interest within the meaning of the statute.

The vital defect in the respondent's argument is that he has overlooked the power to *amend*, vested in Terrill by the trust instrument. Assuming, for the sake of argument, that the termination or revocation of the trust under the circumstances could not work to Terrill's interest, the power of amendment certainly could. Under it, he might, with the consent of his mother and his aunt, designate himself as sole beneficiary to the exclusion of all other heirs at law of the grantor. In other ways he might modify the trust to his own advantage. He would have only to secure the consent of his mother and his aunt, if either were living, to obtain for himself the control, management, and disposition of the trust corpus, together with the entire ownership of both the corpus and the accumulated income after the grantor's death. Such a power is not a "remote possibility"—it is a present right, fraught with great actual and potential value. See *Jane B. Shiverick*, 37 B. T. A. 454, and *Sophia P. O. Morton*, 38 B. T. A. 419. Cf. *Mary A. Cushing*, 38 B. T. A. 948.

Nor can it be said that the interests of Mrs. Terrill and Mrs. Hobson are identical with those of the grantor, thereby giving to the grantor effective control over the right to amend and revoke. On the contrary, the rights of the two daughters of the grantor more nearly coincide with those of Terrill. By an agreement of all three, the trust could be amended to their mutual advantage and to the disadvantage or even of the exclusion of the grantor. It is no answer to say that in this particular case the daughters and grandson of the grantor, doubtless, would not make such an amendment. The trust instrument grants them the power to do so. It is the power to revest title and to control, with which the statute deals. *Corliss* v. *Bowers*, 281 U. S. 376. Under neither section 166 nor 167 is the disputed trust income taxable to the grantor.

We are constrained to observe that no attempt to escape taxation was evidenced in these proceedings. The respondent already has assessed and collected a gift tax on the very property which he now asserts to be within the control of the grantor and the income from which he seeks to tax to the grantor. Taxes on the income from that property have been assessed to and paid by the trustee. Taxes on the distributable portion of the income have been assessed to and paid by the petitioners as beneficiaries thereof.

*Decisions will be entered under Rule 50.*