## WHITELEY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7620.

Circuit Court of Appeals, Third Circuit.

May 29, 1941.

---

Frederick H. Spotts, of Philadelphia, Pa. (Robert C. Fluhrer, of York, Pa., and Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., on the brief), for petitioner.

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before CLARK, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal from the Board of Tax Appeals involves income taxes for the years 1933, 1934, and 1935. There are two issues presented which are dealt with separately in this opinion.

## I.

The first issue involves income tax for the three years mentioned and turns upon facts and circumstances surrounding a trust which was set up by a trust deed executed May 31, 1932 by Purdon Smith Whiteley, wife of the taxpayer, with the husband as beneficiary. Respondent relies upon § 166 of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Acts, pages 543, 727, adding for good measure § 22(a) and § 167(a) (3), 26 U.S.C.A. Int.Rev.Acts, pages 487, 543, 669, 727.

The taxpayer is a Pennsylvanian. Prior to and during the years with which we are concerned he maintained a marginal stock account in which the debit balances in 1931 and 1932 ran between $200,000 and $300,000. Mrs. Whiteley had loaned to her husband shares of preferred stock owned by her to protect his account and had, also, loaned him cash which he had used to pay bank loans secured to protect his brokerage account. December, 1931, and May, 1932 were critical periods in the taxpayer's financial affairs. In December Mrs. Whiteley, with the taxpayer's consent, consulted her father, Mr. C. Elmer Smith, a Director of the Western National Bank of York, Pennsylvania, concerning the problem. After conference with Mr. Smith and Mr. George T. Livingstone, the president of the bank, the taxpayer placed himself in their hands with regard to fiscal matters. After December, 1931 Messrs. Smith and Livingstone took care of the wife's financial transactions for the taxpayer and she followed their directions. The trust out of which this litigation arises was set up on May 31, 1932. Upon Mr. Livingstone's recommendation insurance policies to the amount of $200,000 were taken out on the taxpayer's life with the wife as beneficiary. A note for $200,000 was prepared by Messrs. Smith and Livingstone and, at their direction, the taxpayer's wife requested her husband to sign it. This note was payable to Mrs. Whiteley and her husband signed it as requested. The note was under seal. The findings of fact indicate a normal domestic situation where both husband and wife are each anxious to give all possible assistance to the other in a situation where the family welfare is involved. It is found that he (Mr. Whiteley) "would have signed a note for a larger amount if his wife had requested him to sign it. She (Mrs. Whiteley) would have given him everything she had to help him out of his financial difficulties."

The trust consists of (1) corporate bonds of a par value of $126,000 which were in the wife's hands on May 31, 1932 and which had been turned over to her by her husband upon receipt by him of them from his father's estate one week earlier; (2) the note of the taxpayer for $200,000; and (3) life insurance policies mentioned above to the amount of $200,000. The income of the trust, after payment of expenses including the premiums upon the policies of insurance, was payable to the taxpayer for life with the provision for advancement of amounts of the principal sum to the tax-

payer upon the consent of the wife if living or, if deceased, the trustee.

The Commissioner has taxed to the taxpayer all the original income of the trust for the years 1933, 1934 and 1935 on the ground that the corpus of the trust was owned by him prior to its creation, that he received all the benefits from the control and distribution of the principal. The taxpayer contends that this trust was just what it had appeared upon its face to be, a trust set up by his wife out of property which she owned and that he is liable only for such part of the income from it as he actually received, upon which he has already paid his income tax.

The Board of Tax Appeals concluded that the real object of the trust was to carry insurance on the petitioner's life and upheld the respondent's contention that the taxpayer was taxable upon the entire income of the trust. Obviously, §§ 166 and 167 of the statute are not controlling if the taxpayer's wife is regarded as grantor of the trust. Equally obviously, if the property belonged to the taxpayer he must lose this case. It seems to us that the critical point in the case turns on questions of fact and that the rules of law are pretty clear. Examination of the record and consideration of the family situation disclosed by the circumstances which led up to the formation of this trust does not convince us that the Board's conclusion was not supported by substantial evidence. We do not, therefore, interfere with it.

## II. Trusts for Minor Children.

The second issue between the taxpayer and the Commissioner relates to the income of four trusts set up by the taxpayer in 1935 for his minor children. The terms are identical in each, and the trusts are irrevocable. The trustee is the First National Bank of York, Pennsylvania. The terms of the trust instrument provide that the trustee is to pay the income to the donor, if and when so ordered by the donor, during the minority of the child to be used solely for the support, maintenance, education and enjoyment of the child. If not called for, the income is to be reinvested. During the calendar year 1935, the income of the trust funds was $5878.00. Of this only $450 was paid the donor and this, with some other funds belonging to the children, was invested in securities in their respective names. None of the income from the trusts was used in 1935 for maintenance of the beneficiaries. A divided Board of Tax Appeals upheld the contention of the Commissioner that this income was taxable to the donor of the trust. Section 167 of the applicable statute provides:

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

"(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called 'charitable contribution' deduction);

then such part of the income of the trust shall be included in computing the net income of the grantor.

"(b) As used in this section, the term 'in the discretion of the grantor' means 'in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question.'"

We have then the question of the taxability to the donor of a trust of trust income which he could have called for to apply to the support of his minor child, but which in fact was not so applied. Had the income gone in payment of the paternal obligation for support it would have been taxable to the parent settlor. Helvering v. Stokes, 296 U.S. 551, 56 S.Ct. 308, 80 L.Ed. 389; Helvering v. Schweitzer, 296 U.S. 551, 56 S.Ct. 304, 80 L.Ed. 389; Helvering v. Coxey, 297 U.S. 694, 56 S.Ct. 498, 80 L. Ed. 986. Is the test of taxability to the settlor under § 167 whether the income could[1] so have gone or whether in fact it

---

[1] Treasury Regulations 86, promulgated under the Act of 1934, seem to adopt the "could" alternative. "The income so inures if it is or may be applied in sat-

did? If the discretion to apply is in the trustee, an opinion of the general counsel for the Bureau of Internal Revenue, concludes that only so much of the income as is actually applied is taxable to the grantor.[2] And this opinion has been adopted in one federal decision. Hudson v. Jones, D.C.W.D.Okl.1938, 22 F.Supp. 938. The Commissioner suggests a distinction between the discretion to apply lodged in the trustee as there and in the donor as here; or, in the alternative, to disregard both memorandum and decision. The Board of Tax Appeals was not only divided in this case, but has, seemingly, gone both ways on the question. Cf. J. S. Pyeatt v. Com'r, 39 B.T.A. 774 with Tiernan v. Commissioner, 37 B.T.A. 1048 (Appeal to C.C.A. 3rd dismissed without opinion, June 12, 1939). The Pyeatt holding has been criticized by a learned writer[3] as virtually amounting "to a complete disregard of the trust entity because it is a family trust." Professor Magill points out[4] that in the Stokes case, cited above, the record indicates that the income taxed to the father was only that actually used for the children, not the total net income of the trust. He believes that the actual use of the income for support of wife or minor child is the foundation for taxation to the settlor. The questions presented are interesting and not without difficulty. But we do not find it necessary to make an attempt to settle them, for the indicated outcome of the case seems very clear under another section of the statute.

An examination of a line of Supreme Court decisions under § 22(a), the gross income section of the statute,[5] seems to leave little or no room to doubt the correctness of the Board's conclusion on this question, even though that conclusion was reached before several of the cases cited hereafter were decided. While these decisions begin with Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, the one which seems to us most conclusive on this question is Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 147, 85 L.Ed. ——, 131 A.L.R. 655. This is the case in which an owner of a bond was taxed upon the money paid upon the interest coupon in the year of its collection, although the year before he had clipped the coupon and given it as a gift to his son. "Such a use of his economic gain," said Mr. Justice Stone, "to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery * * * or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son". To the same effect (and decided the same day) is Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. ——. Reference should be made also to Harrison v. Schaffner, March 31, 1941, 61 S.Ct. 759, 85 L.Ed. ——.

In this case the settlor of these trusts by its terms could have received its income and applied it to the support of his minor children. He did not choose to do so, but left it to accumulate for them. He controlled the use of the money and had the same non-material satisfaction as that of the taxpayer in the Horst case.

While we believe this is sufficient to determine the point of the taxpayer's liability it may be added that under the terms of the trusts he exercised other controls as well. Distributed income was to be invested if ordered and approved by the taxpayer. Upon attaining majority each child was to get the income and corpus with the taxpayer determining time and amounts. During his life investments and reinvestments were to be made only with his approval. He likewise reserved the right to vote all shares of stock held in trust. These facts

---

isfaction of a legal obligation of the grantor." Art. 167-1.

[2] G.C.M. 18972, 1937—2 Cum.Bull. 231, 233.

[3] Randolph E. Paul, "Five Years with Douglas v. Willcuts", 53 Harv.L.Rev. 1, 8, note.

[4] Taxable Income, pp. 245, 246.

[5] Revenue Act of 1932, c. 209, 47 Stat. 169:

"§ 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property, also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

786

certainly do not lessen that which evidences his control and the propriety of taxing him upon the income.

The decision of the Board of Tax Appeals is affirmed.