### STUART v. COMMISSIONER OF INTERNAL REVENUE.

### STUART v. COMMISSIONER OF INTERNAL REVENUE.

#### Nos. 7695, 7696.

Circuit Court of Appeals, Seventh Circuit.
Dec. 19, 1941.

· Herbert Pope, W. D. McKenzie, Benjamin M. Price, and Geo. I. Haight, all of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., Bernard Chertcoff, and Gerald L. Wallace, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

These petitions seek to review decisions of the United States Board of Tax Appeals. We shall treat them in the order of their numbers.

In the case of John Stuart, the Commissioner determined income tax deficiencies against him for the years 1934 and 1935. The Board confirmed that ruling and held that under Section 166(2) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Code, § 166(2), petitioner was taxable on the net income of three trusts which he had created in 1930 for the benefit of his three children.

The evidence comprised a stipulation of facts and petitioner's testimony, which substantially is as follows:

On March 31, 1930, petitioner executed three·trust agreements, one for his daughter Joan, who had just been married; one for another daughter, Ellen, who was about to be and is now married; and one for his son, John. In 1934 all three children were over twenty-one years of age.

Petitioner created the trusts because he felt that the daughters ought to be made independent so that they could conduct their homes in a reasonable manner. He had been giving his children allowances, a plan which he did not approve, particularly after marriage. He appointed his wife, Ellen Shumway Stuart, his brother Robert Douglas Stuart, and himself as trustees of each trust. His reason for appointing his wife and brother was that he knew that they shared his point of view in regard to the children, their needs, and how he wanted them to live, and that they would be just as strict in dealing with the children as he would be. He thought the children's interests would be better served and protected by having them as trustees than by having a corporate trustee. They knew that the trusts were created entirely for the benefit of the children, and the petitioner felt sure that as trustees they would resist any attempt by anyone to change that objective.

Petitioner's net worth, at the time the trusts were created, exceeded $4,000,000 exclusive of the trust property which was worth about $575,000. Each trust made the same provision for each child and each comprised 700 shares of common stock of the Quaker Oats Company, of which petitioner was president.

For the first fifteen years the trustees were to pay to the child designated as the beneficiary of the particular trust so much of the net income as in the discretion of the trustees they should deem advisable,

and they were directed to add any undistributed income to the principal of the trust. After fifteen years the trustees were to pay the entire net income to such child. Upon the death of a child the trustees were to pay the principal of the trust to that child's issue then living, or, if there were no such issue, then to the issue of the petitioner then living, or, if there were no such issue then living, then in equal shares to Princeton University and the University of Chicago. The trustees were given the usual broad powers of management and administration. There was a spendthrift clause, a clause exonerating the trustees from liability except for fraud or willful mismanagement, a provision appointing a trust company as a co-trustee if two of the trustees should resign, and a provision that the trust should be governed by the laws of the State of Illinois.

The eighth and ninth articles of each indenture provided as follows:

"Eighth. The Donor reserves and shall have the right at any time and from time to time to direct the Trustees to sell the whole of the Trust Fund, or any part thereof, and to reinvest the proceeds in such other property as the Donor shall direct. The Donor further reserves and shall have the right at any time and from time to time to withdraw and take over to himself the whole or any part of the Trust Fund upon first transferring and delivering to the Trustees other property satisfactory to them of a market value at least equal to that of the property so withdrawn.

"Ninth. During the life of the Donor, the said Ellen Shumway Stuart and the said Robert Douglas Stuart, or the survivor of them, shall have full power and authority, by an instrument in writing signed and delivered by them or by the survivor of them to the Trustees, to alter, change or amend this Indenture at any time and from time to time by changing the beneficiary hereunder, or by changing the time when the Trust Fund, or any part thereof, or the income, is to be distributed, or by changing the Trustees, or in any other respect."

On August 3, 1935, taxpayer's wife and brother, above named, executed an amendment to each of the three trust indentures cancelling the eighth article and changing the ninth to read as follows:

"Ninth. This Indenture and all of the provisions thereof are irrevocable and not subject to alteration, change or amendment."

The total net income of the three trusts for 1934 was $22,560.02. Of this, Joan and Ellen each received the full shares of $7,496.74. There was distributed to John for that year $1,863.33, and there remained in his trust an undistributed amount of $5,703.21. For 1935 there was a total net income of the trusts of $25,725. Of this, the trusts of Joan and Ellen were each entitled to $8,295, and John's trust was entitled to $9,135. There was a partial distribution which left undistributed balances of income for this year due the trusts in the order named, the respective sums of $619.64; $821.20; and $6,394.50.

The Commissioner determined that the net income from each of the three trusts for 1934, and from January 1, 1935, to August 3, 1935, the date of the amendment, was taxable to the taxpayer, and upon that basis determined the deficiency. The Board sustained the Commissioner.

The Commissioner, in support of the Board's ruling, relies upon Section 166 of the Revenue Act of 1934, the material part of which reads as follows:

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

\*    \*    \*    \*    \*    \*    \*

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor."

Under this section the Commissioner contends that the terms of each indenture require the conclusion that there were no fiduciary restrictions upon the power of the taxpayer's wife and brother to revest the corpus of each trust in the taxpayer. Furthermore, he contends that the taxpayer's wife and brother had no interests in the property which were substantially adverse to those of the taxpayer, and this he asserts to be true in view of family and business relationships, and the existence of an identical power in the taxpayer and his brother's wife with respect to trusts executed by his brother for the benefit of his own children.

The Commissioner bases his argument upon the premise that "if there is any pos-

sibility that the grantor (John Stuart) might become revested with the corpus of the trust the income is taxable to him." He asserts that this premise is contained in Treasury Regulations 86 under section 167 ("which provides for the taxation of the income of a trust to the grantor if he has retained an interest in the income thereof"), and that this regulation should be applied to section 166 which complements section 167. He further states that the test contained in his premise has been unanimously applied to section 167 by all the Circuit Courts of Appeal to which the question has been presented, including this court. See Graff v. Commissioner, 7 Cir., 117 F.2d 247. All the cases cited support the treasury regulation. However, none of them support the Commissioner's premise, because it is not supported either by the regulation or the Statute. The key thought of the Commissioner's premise is merely the *possibility* of *reinvestiture*. The "single test" of the regulation for section 166, is "whether the grantor has failed to *divest himself* * * * of every right which might by any possibility enable *him* once more to possess and *enjoy in title* the trust corpus." (Our emphasis.) It is only in case the grantor has retained any such interest that he is taxable with respect to the income of the trust. His reinvestiture must be based on some right which he has retained ab initio.

■ In the instrument before us, the grantor neither reserved nor retained any right which might by any possibility *enable him* to repossess or enjoy in title the trust property. True, in article eight he reserved the right at any time and from time to time to withdraw and take over to himself the whole or any part of the trust fund, but before doing so he must transfer and deliver to the trustees other property satisfactory to them, of a market value at least equal to that of the property so withdrawn. It is not denied that this provision was inserted to preserve to the trust the benefit of the grantor's vast knowledge and experience, and yet any such shifting or trading of investments must first be approved by the other trustees, and in no other respect was their power to invest or reinvest disturbed. This of course was a retention of a right, although not an exclusive one, yet it was not such a right as could by any possibility enable the grantor to possess and enjoy in title the trust corpus. It was merely the right to make

an offer to exchange securities which could not be enforced by the grantor without the consent of the other trustees.

■ The Commissioner contends, however, that John Stuart's right to recapture the corpora of these trusts is found in the exercise of the other trustees' discretion, as set forth in the original ninth article. He does not contend that this is either a legal, an equitable, or a moral right which the grantor could enforce, but he insists that because of the cross relationship between the grantor and his brother, R. Douglas Stuart, a trustee, the latter would be amenable to the wishes of the grantor. This cross relationship, aside from consanguinity and business relations, also contemplates the fact that almost two years subsequent to the declaration of the John Stuart trusts, his brother R. Douglas Stuart declared a trust primarily for the benefit of his children in which he had named himself and his wife and petitioner as the trustees with substantially the same powers as those given to the trustees in the John Stuart trusts. Likewise the Commissioner insists that because of the marital relation between petitioner and his wife, she would be amenable to his wishes even to the point of depriving her own children of their rightful and perhaps needed allowance. Assuming without admitting such effect of these cross relationships as a legal conclusion, we submit that under such circumstances the recapture of the corpora of the trusts by petitioner would be by virtue of the future exercise of his influence over the other trustees and not by virtue of any right which he reserved or failed to grant at the time of his declaration, which is the "single test" promulgated by the Treasury Regulation.

We are not dealing here with technical considerations, niceties of the law, or the legal paraphernalia which inventive genius has constructed as a refuge from surtaxes. There is no inventive genius here; it is all quite old in the art. Congress, long ago and quite clearly, described the issue, and the Treasury Department, in unambiguous language, promulgated a regulation which laid down just one test for us to follow in determining the taxpayer's liability, if any.

■ The basic question then is whether the grantor by his original declaration "failed to divest himself * * * of every right which might by any possibility enable him once more to possess and enjoy in title the trust corpus." If he failed to do

so he can not prevail here. If he did not thus fail he should prevail, even though as a result, his surtaxes may have been minimized. We fully appreciate that nothing should obscure this basic issue, and we feel assured that the mere decrease in the amount of the grantor's surtaxes is not sufficient to authorize us to alter the plain words of the Statute and the Treasury Regulations under the guise of judicial construction. To lawfully reduce one's surtaxes, by gift or otherwise, is permissible, and of itself raises no presumption of an intention to defraud the Government. We think the grantor has fully met the test of the regulation, unless the trustees, other than the grantor, have the power under the declaration to revest the grantor with the income or corpus, and have no power to invest any other person with such property who after such investiture must be considered as holding a substantially adverse interest to that of the grantor.

▇▇▇ The Board held that the instrument gave to the grantor's wife and his brother, or the survivor of them, during the grantor's life, full power and authority to alter the instrument by changing the beneficiary, or by changing the time when the trust fund, or any part thereof, or the income, is to be distributed, or by changing the Trustees, or in any other respect. Hence it held that power to revest in the grantor was vested in the wife and brother who were persons not having a substantial adverse interest in the corpus. If the wife and brother had the power under this provision to substitute the grantor as sole or part beneficiary, they likewise would have the same power to substitute themselves, or any one else, as beneficiaries. In either event it is not necessary that such event should have transpired. If the wife and brother had the power to name themselves, or others than the grantor, as beneficiaries, that power or right was certainly adverse to the grantor's interests. It was full and complete and not limited by reservation or failure of divestiture. Indeed, if the grantor by his instrument had in any manner reserved any interest in the property in question the other trustees would be powerless to pass a complete title. None of the cases cited by the Commissioner presented facts similar to those here. In each there was a clear reservation in the grantor, or a power or discretion in the trustees by means of which the grantor could be revested, and there was no power

given any trustee, not a grantor, to substitute beneficiaries. See Kaplan v. Commissioner, 1 Cir., 66 F.2d 401; Rollins v. Helvering, 8 Cir., 92 F.2d 390; Altmaier v. Commissioner, 6 Cir., 116 F.2d 162; White v. Higgins, 1 Cir., 116 F.2d 312; Graff v. Commissioner, 7 Cir., 117 F.2d 247; Commissioner v. Caspersen, 3 Cir., 119 F.2d 94, certiorari denied October 13, 1941, 62 S.Ct. 83, 86 L.Ed. ——; Kent v. Rothensies, 3 Cir., 120 F.2d 476, certiorari denied October 13, 1941, 62 S.Ct. 113, 86 L.Ed. ——; Whiteley v. Commissioner, 3 Cir., 120 F.2d 782, certiorari denied October 13, 1931, 62 S.Ct. 110, 86 L.Ed. ——.

▇▇▇ However, we are not convinced that the wife and brother of the grantor were empowered by this instrument to revest title to this property in the grantor, their co-trustee. A court of equity has power to control the administration of a trust so that it will accord with the purposes of the grantor. A discretion lodged in a trustee is rarely, if ever, to be regarded as a permit to act arbitrarily. Such discretion should be confined to the exercise of judgment not unreasonable in the light of the purposes of the trust and of the circumstances in which it is sought to be exercised. The power of the court exists solely for the protection of the right of the grantor and the beneficiaries (see Rollins v. Helvering, supra), and the laws of Illinois in this respect are applicable to this case. It was conceded in argument by the Commissioner that under the Illinois law the wife and brother as trustees would have no right to substitute themselves, or either of them, as beneficiaries, yet he insists that they would have the right to substitute their co-trustee, the grantor, as the sole beneficiary. If this be true, then the grantor reserved nothing in the original grant, and there would be no tax due from him under the statute. See Huffman v. Commissioner, 39 B.T.A. 880.

▇▇▇ However, we are convinced that the wife and brother as trustees had no authority under the Illinois law to revest the property in the grantor. This would be to give them power, not only to destroy the trust but to dissipate the proceeds contrary to the purposes set forth in the declaration, and it would also furnish an opportunity by secret agreement for subsequent distribution among the trustees. Such a door should not be left open. Congress and the courts, theoretically, at least, have always regarded the preservation of

trust funds as a sacred obligation, and they have always and everywhere proceeded on the theory that a trust officer should not be permitted to be placed in any position where he may be "tempted above that which he is able."

Both by law and the express request of the declaration, the meaning and effect of the trust is to be determined by the laws of Illinois. See Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585. Federal authorities control only those cases where the apparent transfer of a right to income is not real, or is only temporary. See Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. Where great discretion is vested in a trustee, its exercise is subject to the control of a court of chancery. Maguire v. City of Macomb, 293 Ill. 441, 127 N.E. 682. A very broad discretion conferred upon a trustee in the selection of beneficiaries does not constitute an unlimited discretion which the court can not control. Welch v. Caldwell, 226 Ill. 488, 80 N.E. 1014. In Jones v. Jones, 124 Ill. 254, 15 N.E. 751, 753, the court said: "It is true that the daughters are invested with a large discretion as to the manner in which they shall execute the trust * * * but the devise being to them for the use and benefit of the children of the deceased son, the discretion vested in them will not defeat the trust. * * * The daughters, as trustees of this share, are not invested with discretion to withhold the trust fund absolutely from the cestuis que trust. The fund is not theirs in equity, and they cannot make it so by a refusal or neglect to exercise the discretion vested in them. Their discretion, as trustees of this fund, is subject to the control of the courts of equity, and cannot be arbitrarily exercised so as to deprive the beneficiaries of all benefit of the fund." See also Frank v. Frank, 305 Ill. 181, 137 N.E. 151. The same principle seems to prevail in all jurisdictions both state and federal. See Restatement of Law of Trusts, Sec. 170; Scott on Trusts, Vol. 2, Sec. 187; Lovett v. Farnham, 169 Mass. 1, 47 N.E. 246; Fleischmann v. Commissioner, 40 B.T.A. 672 (acquiesced in by Commissioner); Downs v. Commissioner, 36 B.T.A. 1129.

In the last-named case the Board said that "in the construction of a trust instrument the intention of the grantor is of utmost importance." This is true, and it constitutes the pole star which should guide courts in determining the purpose of the trust and the limitation of the trustee's discretion. We are convinced that under the terms of these trusts no contingency could arise which would enable the grantor to have the income or corpus distributed to him, actually or constructively, and it is well to note that the instrument itself provides for liability of the trustees in case of fraud or mismanagement.

The Commissioner urges that the Board's ruling must be sustained under Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788. He seems to construe that decision as meaning that the interests of beneficiaries under a trust may be disregarded for purposes of taxing the grantor if the beneficiaries are members of his family, because they would probably not assert their rights. It can not well be denied in such event that a question presents itself for a court of chancery to determine, which federal courts will not ignore. We think the ruling in the Clifford case did not go so far as to hold that mere family solidarity gave the federal courts the right to ignore the State jurisdiction to determine the rights of beneficiaries under a trust, and the extent of the trustees' discretion. The elements required to bring a taxpayer within the scope of that case are quite clearly noticed in Helvering v. Elias, 2 Cir., 122 F.2d 171. They are (a) close family relationship, (b) short trust term, and (c) reservation of powers of management. See also Commissioner v. Barbour, 2 Cir., 122 F.2d 165. Certiorari was denied in both of these cases. 62 S.Ct. 361, 86 L.Ed. ——. In the present case we have no short terms, nor power of management in the grantor.

We think the Board erred in holding that the petitioner John Stuart was liable under Section 166(2) of the Act, and from what we have said we are of the opinion that he was not liable under Section 167(a), which deals with revocable trusts, or under Section 22, which deals with gross income, 26 U.S.C.A. Int.Rev.Code, §§ 166(2), 167 (a), 22.

With respect to cause number 7696, the petitioner, R. Douglas Stuart, on March 25, 1932, created four separate trusts for the benefit of his four children, Robert, Anne, Margaret and Harriet. They were all minors and their birth dates respectively were April 26, 1916, January 11, 1920, January 3, 1922, and February 3, 1928.

The provisions of these trust agreements were substantially the same except for one provision hereafter noted. Each of the trusts comprised 1500 shares of common stock of the Quaker Oats Company, of which the petitioner was first vice-president. The trustees were the petitioner, his wife, Harriet McClure Stuart, and his brother, John Stuart.

The trust agreements provided that the trustees should pay to the child designated as the beneficiary of the particular trust agreement or apply to such child's education, support and maintenance, so much of the net income as the trustees should deem advisable, and that the trustees should add the unexpended portion of the net income to the principal of the particular trust. When the beneficiary became 30 years of age (25 years of age in the case of Robert) the trustees were to pay over to such beneficiary one-half of the principal of the trust. Thereafter the trustees were to pay over to the beneficiary the net income from the remaining one-half of the principal of the trust until such beneficiary became 35 years of age (30 years of age in the case of Robert) when the trustees were to pay over to the beneficiary the remaining one-half of the principal of the trust.

In the event of the death of a child of the petitioner before receiving all the principal of his trust, the trustees were to pay over the principal of the trust to the child's issue then living, or, if there were no such issue, then to the living issue of the petitioner, or, if there were no such issue then living, then in equal shares to Princeton University and the Presbyterian Hospital of Chicago. The trustees were given the usual broad powers of management and administration. There was a spendthrift clause, a clause exonerating the trustees from liability except for fraud and willful mismanagement, a provision appointing a trust company as a co-trustee or sole trustee if two of the trustees should resign, and a provision that the trust should be governed by the laws of the State of Illinois.

Paragraphs eight and nine of these trusts are identical with paragraphs eight and nine of the John Stuart trust, except as to the names of the donor and the other two trustees.

On August 2, 1935, each of these trust agreements was amended by the two trustees, Harriet McClure Stuart and John Stuart, by eliminating paragraph eight, and changing paragraph nine so as to make the indenture and all of its provisions irrevocable and not subject to alteration, change or amendment.

In all the years from the creation of the trusts to and including 1935, the entire net income of these trusts was accumulated and added to the principal, except that in 1934 there was distributed to Robert $1,391.50, and in 1935 there was distributed to him $1,882.50 of the income. At the time of the creation of the four trusts, the taxpayer's net worth was approximately $3,000,000, and the property which he transferred to the trusts had a value of approximately $600,000.

Bearing on the question of motive, the petitioner had discussed the matter with his brother, John Stuart, prior to the creation of the trusts by his brother, John, in 1930, and it seemed to this petitioner that John's was a wise procedure. When the trusts were created, petitioner's children were all minors. He said: "Times were very uncertain and I felt that while I had an opportunity to provide for them in the form of a trust, that was the wise thing to do." No changes have been made in the beneficiaries of the trusts nor in the property that went into them.

The Commissioner determined that the entire net income of the trusts for 1934, and from January 1 to August 2, 1935, was taxable to the petitioner under section 166(2) of the Act, and the Board affirmed that determination. The Board did not deem it necessary to consider the applicability of sections 167(a) and 22(a) of the Act.

The same questions are presented in this case as were presented in the former case. The only factual difference with respect to the trusts of the two brothers is that during the years 1934 and 1935 John's children were all of age, and the children of Douglas were all minors. It is to be noted with respect to the trusts of the daughters of Douglas, that the entire income involved was accumulated and added to the principal for later distribution to them at the specified ages, whereas with respect to John's daughters substantially all the income was distributed currently to them. With respect to their sons, it is further to be noted that relatively small sums were paid to them, and the balance was accumulated and added to the principal.

What we have said in the case of the trusts for John's children, with respect to the applicability of sections 166(2) and 167 (a) (2), need not be repeated. We hold

780

that those two sections are not here applicable.

The remaining question is whether section 22(a) is applicable, because of the minority of his children under Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391. We think it is, to a limited extent, because in each trust here involved the indenture provides for the use of the income for the education, support and maintenance of the minor children, and if it was so used, such applications, under the Willcuts case, must be considered as having been used for the grantor's benefit in the discharge of his obligation to his minor children. Such obligation is, of course, limited to a reasonable allowance consistent with the taxpayer's station in life, and the minor's welfare. Under the ruling of Commissioner v. Grosvenor, 2 Cir., 85 F.2d 2, the burden was on the grantor, if he were to escape taxation on the trust income, to prove that the distributed income was not in fact used for those purposes. We think that burden has been met with respect to all of the income of these trusts, with the exception of $1,391.50 which was paid to Robert in 1934, and $1,882.50 which was paid to him in 1935. All of the income received, aside from these two sums, was admitted to have been credited to principal, and this fact would seem to eliminate any possibility that it was or could ever be applied to the support or education of the minor children.

The Commissioner relies on Whiteley v. Commissioner, 3 Cir., 120 F.2d 782, 785, certiorari denied October 13, 1941, 62 S.Ct. 110, 86 L.Ed. ——, as holding that the income from the trusts must be taxed against the income of the taxpayer because it was available and could have been used to discharge his obligations to his minor children, although in fact it never was. We are not convinced that the Whiteley case goes that far, although the precise language referred to is found in that opinion if it be read separately from its context. In that case, and other seemingly analogous cases, there were clear reservations of rights to the grantor which might well be considered as bringing the trusts within the provisions of section 167 as well as section 22(a). Indeed, the opinion in the Whiteley case informs us, with respect to the children's trusts, that the respondent there relied upon sections 167(a) (1) (2) (3), (b), and the court quotes them as the "applicable statute," and adds that "an

examination of a line of Supreme Court decisions under § 22(a), the gross income section of the statute, seems to leave little or no room to doubt the correctness of the Board's conclusion * * *." It should be further noted that that court also found that the settlor could have received the entire income and applied it to the support of his minor children, which he did not choose to do, and it further found that the settlor controlled the use of the money, neither of which rights did the settlor reserve in either of these trusts.

The burden being on this taxpayer to prove that the distributed income was not in fact used for the education and support of his minor son, we think that the amount of such income which was actually received by him, or for him, must be considered as being income of the grantor, because there is no evidence to the contrary.

In cause number 7695 the decision of the Board is reversed. In cause number 7696 the Board's decision is affirmed as to the income which was distributed to Robert Stuart during the years 1934 and 1935. The decision is reversed as to those amounts of income which were not distributed to the beneficiaries but were credited to the corpora during the years in question. The causes are ordered remanded for further proceedings not inconsistent with this opinion.