GLENN D. CLOES and MICHAL CLOES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cloes v. Commissioner
Docket No. 9971-80.
United States Tax Court
T.C. Memo 1981-726; 1981 Tax Ct. Memo LEXIS 21; 43 T.C.M. (CCH) 154; T.C.M. (RIA) 81726; December 23, 1981. Glenn D. Cloes, pro se. Charles P. Hanfman, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Chief Judge: Respondent determined deficiencies and additions to tax under section 6653(a)[1] in petitioners' Federal income taxes as follows: Year
Deficiency
Addition to tax
1976
$ 3,781.00
$ 189.00
1977
7,332.00
367.00
1978
7,530.40
377.00
The issues we are asked to decide are: (1) whether petitioners are, or a trust created by *24 them is, taxable on certain income; (2) whether petitioners are entitled to depreciation and an investment credit for certain property leased to the trust; (3) whether petitioners have substantiated their itemized deductions claimed on their Federal income tax returns; (4) whether petitioners are liable for additions to tax imposed by section 6653(a) upon "any underpayment * * * of any tax * * * due to negligence or intentional disregard of rules and regulations." FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, filed their joint Federal income tax returns with the Internal Revenue Service Center at Chamblee, Ga. They resided in Stone Mountain, Ga., when they filed their petition in this case. On July 21 and 22, 1976, petitioners executed documents purporting by their terms to transfer several property interests as well as the "exclusive use" of petitioners' lifetime services to an irrevocable trust. By one document, petitioner Glenn Cloes (Glenn) "created" the "Glenn D. Cloes Family Equity [Irrevocable] Trust" (the Trust) and named petitioner Michal Cloes (Michal) and one A. Frank Daniel as trustees. *25 [2] The term of the Trust was 25 years, [3] and during this time, the trustees "in their sole discretion" (as determined by majority vote) could distribute trust income to the beneficiaries in proportion to their beneficial interests. The beneficiaries were those persons validly holding certificates of beneficial interest in the Trust. During the years in dispute, each petitioner owned 50 of the 100 beneficial units representing beneficial interests in the Trust. Michal, by two documents, purported to convey her interest in certain realty and personalty [4] to Glenn subject to the condition that he reconvey it plus his interest in the same property to the Trust and, in addition, agree to give Michal a 50-percent beneficial interest in the Trust. The real property transferred included some rental property located in Texas which produced income during the taxable year. *26 Michal also purported to convey to the Trust "the exclusive use of [her] lifetime services and all of the currently earned remuneration therefrom." Glenn then executed documents purporting to convey to the Trust all that he received from Michal as well as "certain of my real and personal properties * * * included therein is exclusive use of my lifetime services and all of the currently earned remuneration accruing therefrom." Additionally, Glenn purported to transfer to the Trust his interest in the Texas rental real estate. [5]
Glenn purported to lease to the Trust a 1971 Toyota Celica, a 1972 Ford Gran Torino station wagon, and a 1977 VW Scirocco for $ 1.00 plus "a monthly rental sufficient to retire any outstanding lien against the vehicle." In addition, *27 Glenn purported to lease petitioners' personal residence to the Trust for $ 1.00 plus an amount equal to the mortgage payments, taxes, and insurance. [6]
During the years in dispute, Glenn was employed by Delta Airlines, for which he was paid [7] $ 21,479.84 in 1976, $ 32,626.79 in 1977, and $ 37,683.90 in 1978. He had additional wages [8] in 1976 of $ 298.72, and during that same year, Michal received wages of $ 2,712.35. [9] Petitioners adjusted their gross income each year for payments allegedly made to the Trust, [10] and they filed Federal income tax returns for the Trust [11] which included in gross income the payments allegedly made by petitioners. Also included in the Trust's gross income was rent of $ 375 in 1976, "miscellaneous" ordinary income of $ 1,521 and capital gain of $ 5,995 in 1977, and interest of $ 1,268.46 in 1978. Moreover, the Trust each year claimed various deductions [12] from gross income, including amounts distributed to its beneficiaries, though these *28 latter amounts do not correspond with the amounts of gross income from trust distributions reported by petitioners. [13]
*29 Glenn was licensed to practice law as an attorney in Georgia in December 1980. OPINION This is another case in the plethora of cases [14] involving so-called "family trusts" created by taxpayers in recent years pursuant to the recommendation of merchandisers of plans for such trusts as a tax avoidance device. As usual, the petitioners assert that they have taken all the necessary steps to establish the trust in question as a valid separate taxable entity and to insulate themselves from taxability on its income. Respondent counters with the assertions that the Trust was not validly established under applicable Georgia law, that, if it was so established, it should be treated as a sham for Federal income tax purposes, and that petitioners are, in any event, taxable on the income of the Trust under the assignment of income doctrine, Lucas v. Earl, 281 U.S. 111 (1930), or under the grantor trust provisions of sections 671 through 678. We agree that respondent should prevail by virtue of the grantor trust provisions and accordingly find it unnecessary to discuss respondent's alternative grounds for reaching the same result. [15] As a consequence, we assume, without *30 deciding, that the trust in question was validly established and subsisting as a separate taxable entity during the taxable years at issue. *31 Initially, we examine the question as to who were the trustees during those taxable years. Clearly, Mr. Daniel and Michal were the trustees from the inception of the Trust until November 3, 1976, when Mr. Daniel resigned. The record is unclear as to what happened thereafter. There is some evidence that Glenn became a trustee, in view of the fact that he signed two tax returns, including the 1976 return (see note 11, supra), but it is conceivable that someone else may have been the trustee during the balance of 1976 and 1977 and 1978 or that Michal served alone as trustee during that period. The burden of proof was on the petitioners to show what in fact the situation was, Rule 142(a), and this they have failed to do. Thus, we deal with several possible combinations of trustees at one time or another during the period involved herein: (1) Mr. Daniel and Michal; (2) Michal and Glenn; (3) Michal and an unknown person; (4) Michal alone. A further preliminary question is the extent to which Michal was also a grantor. She transferred certain property interests of hers to Glenn subject to the explicit condition that he transfer them to the Trust. Under these circumstances, *32 it is clear to us that, as to those interests, Glenn was only the nominal grantor and Michal was the grantor to the same extent as if she had conveyed those interests directly to the Trust. Cf. Whiteley v. Commissioner, 42 B.T.A. 402 (1940), affd. 120 F.2d 782 (3d Cir. 1941). See also Bixby v. Commissioner, 58 T.C. 757, 791 (1972). [16]
It is against the foregoing background that we consider the applicability of the grantor trust provisions. Two sections of those provisions are potentially applicable: (a) section 674(a), which, subject to exceptions not here relevant, provides that "[t]he grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval *33 or consent of any adverse party"; (b) section 677(a), which provides that "[t]he grantor shall be treated as the owner of any portion of a trust * * * whose income * * * in the discretion of the grantor or a nonadverse party, or both, may be * * * distributed to the grantor or the grantor's spouse." Insofar as this case is concerned, the critical question is whether any of the trustees were adverse parties within the meaning of section 672(a). [17] Our analysis of this question shows: (1) Mr. Daniel had no beneficial interest in the Trust and clearly was not an adverse party. (2) As to any other potential *34 trustees, petitioners have not proved who they were, much less the nature, if any, of their interest. (3) Glenn and Michal were both grantors and beneficiaries. Although, under normal circumstances, a beneficiary of a trust is usually considered to have an adverse interest, we think that is not the case here. Cf. De Amodio v. Commissioner, 299 F.2d 623 (3d Cir. 1962), affg. 34 T.C. 894 (1960). This is particularly so, under section 677, where neither spouse is considered an adverse party as against the other. See Vercio v. Commissioner, 73 T.C. 1246, 1258 (1980). In short, we are satisfied that the arrangements herein clearly fall within the ambit of the grantor trust provisions and that consequently the income of the Trust during the taxable years in question is taxable to petitioners. Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Vercio v. Commissioner, supra at 1255-1259. The second issue which we must decide is whether petitioners are entitled to depreciation or investment credit on automobiles purportedly leased to the Trust. *35 Depreciation and investment credits are only allowable with respect to property used in a taxpayer's trade or business or held for the production of income. Sections 167(a) and 48(a)(1); see sections 1.167(a)-1(a) and 1.48-1(c), Income Tax Regs. The burden of proof is on petitioners to show that either test has been met, Rule 142(a). On brief, petitioners fail to argue the disallowance by the respondent of depreciation and the investment credit in respect of the cars, and, under these circumstances, we consider that they have abandoned the issue. In any event, the only evidence introduced on this issue was the lease document executed by Glenn and Michal (in her capacity as trustee). There is no evidence even suggesting that either petitioner was in the trade or business of leasing property or that the automobiles were used in connection with any other business or that Glenn had a genuine profit motive in making the so-called lease arrangements. In fact, for all that appears in the record, petitioners continued to use the automobiles for personal purposes. Section 262. Accordingly, petitioners have failed to carry their burden *36 of proving that depreciation or an investment credit is allowable. [18]
The third issue to be decided is whether petitioners are entitled to certain itemized deductions claimed on their Federal income tax returns. The burden of proof is on petitioners, Rule 142(a), they introduced no evidence on this point, and they have failed to argue the issue on brief. Accordingly, we hold on this issue for respondent. The fourth issue is whether the addition to tax imposed by section 6653(a) is appropriate herein. The burden of proof is on petitioners to show that it is not appropriate, Rule 142(a); Enoch v. Commissioner, 57 T.C. 781, 802 (1972), and we hold that they have failed to carry their burden. While petitioners introduced some testimony suggesting an advice-of-counsel defense, see, e.g., Federal Bulk Carriers, Inc. v. Commissioner, 66 T.C. 283 (1976), affd. 558 F.2d 128 (2d Cir. 1977), *37 the testimony was sufficiently vague to prevent our finding that petitioners were in fact advised to pursue this "flagrant tax avoidance scheme." See Wesenberg v. Commissioner, 69 T.C. 1005, 1015 (1978). Although Glenn did not become licensed to practice law until December 1980, it is clear to us that he is and was a highly intelligent man who understood the legal implications of the transactions involved herein from their inception. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in dispute and all references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. Mr. Daniel resigned as trustee on November 3, 1976. ↩
3. The trustees are given power to renew the Trust "if they so desire." Additionally, they are given power to terminate the Trust if necessary "to protect or conserve trust assets." The beneficial interest in the corpus of the Trust is left unspecified.↩
4. The personalty is listed in a schedule attached to the document of conveyance, and it seems to include the furnishings of petitioners' personal residence. Although the document refers to another schedule listing the realty, no such schedule is in evidence.↩
5. We do not know what, if any, other realty was intended to be conveyed, because the document of conveyance does not specify other property or properties.↩
6. The description of the real property in the "lease" agreement was modified in 1977. We cannot determine whether the modification reflects a change in property or is only a clarifying restatement.↩
7. Petitioners have not conceded that these payments were earned other than as an agent for the Trust, and we do not intend our description necessarily to suggest the contrary. See n. 15, infra↩. 8. See n. 7, supra↩. 9. See n. 7, supra↩. 10. These "adjustments" totaled $ 11,113.00 in 1976, $ 30,164.00 in 1977, and $ 37,683.90 in 1978, and they were characterized as payments of nominee income. Because the Trust was created in July 1976, the difference between petitioners' "wages" in 1976 (see n. 7, supra↩) and their claimed "nominee income" presumably reflects an allocation to that part of the year preceding the creation of the Trust. The difference between Glenn's "wages" for 1977 and the "adjustment" for that year is unexplained. 11. The 1976 and 1978 fiduciary returns were signed by Glenn as trustee, while the 1977 return was signed by Michal as trustee. ↩
12. For 1976, the Trust claimed deductions including $ 2,515 for "[h]ousing," $ 976 for "[u]tilities," and $ 486 for "[t]rustee's [m]edical & dental." Similar deductions were claimed for the other years, presumably related to the provision of the Trust's indenture providing for the trustees to pay themselves "reasonable compensation." ↩
13. Year
Trust deduction
Beneficiary income
1976
$ 1,726
$ 690.00
1977
5,582
2,233.00
1978
744.50
The Trust reported a net loss for 1978.↩
14. See Bolter v. Commissioner, T.C. Memo. 1981-378↩, and cases collected therein. 15. Because of our disposition of this case, we do not decide whether the conveyances were valid under state law. See Ga. Code Ann. sec. 29-101 (1980). But see Budget Charge Accounts v. Peters, 213 Ga. 17, 96 S.E.2d 887 (1957); Toney v. Toney, 196 Ga. 666, 27 S.E.2d 296 (1943). Similarly, we do not reach respondent's argument that the assignment of income doctrine, see generally 3 B. Bittker, Federal Taxation of Income, Estates and Gifts par. 75.2 (1981), is applicable to the wage income. Compare Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980), and Wesenberg v. Commissioner, 69 T.C. 1005, 1010-1011 (1978), with Foglesong v. Commissioner, 621 F.2d 865 (7th Cir. 1980), revg. T.C. Memo. 1976-294, and Rubin v. Commissioner, 429 F.2d 650 (2d Cir. 1970), revg. 51 T.C. 251 (1968). See also S. Surrey, "Assignments of Income and Related Devices: Choice of the Taxable Person," 33 Colum. L. Rev. 791, 795 (1933); Muir v. Commissioner, 3 B.T.A. 165 (1925). We also do not reach respondent's argument that the Trust is a sham. Cf. Wesenberg v. Commissioner, supra↩ at 1011.
16. Since Glenn and Michal filed joint returns during the years before us, we have no need to determine what portion of the income of the Trust should be attributable to each; at least, neither party has raised any question which might cause us to engage in such an exercise.↩
17. That section provides: SEC. 672. DEFINITIONS AND RULES. (a) Adverse Party.--For purposes of this subpart, the term "adverse party" means any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust. A person having a general power of appointment over the trust property shall be deemed to have a beneficial interest in the trust. (b) For purposes of this subpart, the term "nonadverse party" means any person who is not an adverse party.↩
18. In view of our disposition of this issue we do not decide whether an investment tax credit can ever be available to a grantor leasing property to his grantor trust.↩