## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

AUGUSTUS S. LOVETT, trustee, *vs.* JOHN E. FARNHAM,
administrator, & others.

Middlesex.    March 17, 18, 1897. — June 15, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Trust not Revoked and Superseded by New Trust.*

A voluntary trust completely established, with no power of revocation reserved,
cannot be revoked or set aside at the will of the person by whom and with
whose property it was set on foot.

Where an absolute discretion is not clearly given, to be exercised at the will of the
person empowered to make a sale or appropriation of principal, an exercise of
the power, to be valid, must be founded upon a reasonable judgment dealing
with existing facts and reasonable anticipations of the future, and having due
regard for the purposes for which the power was given, and also for the rights
of those whose interests are injuriously affected by its exercise.

A woman placed funds in the hands of A., in trust to pay over the income for her
support and maintenance " as she shall require it, and such portion of the
principal as she in her judgment may deem necessary for her comfort and sup-
port, and at her death, after the payment of her just debts and funeral expenses,
to divide " what remained " equally between her two children, . . . share and
share alike, if they be then living, and if either or both of them be dead then
to their children by right of representation."    After having paid over the
income for five years, A. received from the settler a letter stating, " I hereby
request of you at this time " a certain sum, " or whatever may be the value of
the principal, and which I deem necessary at this time for my comfort and sup-

port." A few days thereafter a new trust instrument was signed by him and the settler in duplicate, and he was informed that the letter and this new trust agreement constituted a revocation of the first trust, and that the property held by him thereunder had been revested in him under the second trust. *Held*, on the death of the settler, that the first trust was not revoked, and the second trust was not substituted therefor.

BILL IN EQUITY, filed February 1, 1897, by a trustee, to obtain the instructions of the court as to the disposition of a trust fund in his hands. Hearing before *Barker*, J., who reserved the case, upon the bill and the answers, for the determination of the full court. The facts appear in the opinion, and in notes by the reporter.

*J. E. Farnham, pro se.*

*A. T. Johnson*, for Frank D. Montgomery.

*S. H. Tyng*, for George W. Montgomery and others.

*F. L. Hayes*, guardian *ad litem*, for Malcolm F. Storrs and others.

BARKER, J.   No power of revocation is reserved to the original owner of the property put in trust by the instrument of April 21, 1891. The stipulation that the trustee shall pay over to her " such portion of the principal as she in her judgment may deem necessary for her comfort and support," is not a power of revocation, but an agreement for the performance of the trust in a way. declared by the instrument itself.* If he pays over to her the whole principal upon its being deemed necessary by her for her comfort and support, she has not revoked the trust, but has required its performance, and the trustee has executed it, and the instrument, having performed its office, no longer controls the disposition of the property.

In this Commonwealth it is settled that a voluntary trust completely established, with no power of revocation reserved, cannot

---

* This instrument, which was signed by the plaintiff, contained the following: " By authority given to me in writing by the said Lemira Storrs, I hereby agree to invest, hold, and handle said funds, and pay over the income thereof for the support and maintenance of her, the said Lemira Storrs, as she shall require it, and such portion of the principal as she in her judgment may deem necessary for her comfort and support, and at her death, after the payment of her just debts and funeral expenses, to divide what then remains in my hands equally between her two children, Richard S. Storrs and Susan G. Montgomery, share and share alike, if they be then living, and if either or both of them be dead then to their children by right of representation."

be revoked or set aside at the will of the person by whom and with whose property it was set on foot.   *Taylor* v. *Buttrick*, 165 Mass. 547.   *Keyes* v. *Carleton*, 141 Mass. 45.   *Sewall* v. *Roberts*, 115 Mass. 262.   *Viney* v. *Abbott*, 109 Mass. 300.   *Falk* v. *Turner*, 101 Mass. 494.   *Stone* v. *Hackett*, 12 Gray, 227, 230.   *Hildreth* v. *Eliot*, 8 Pick. 293.

The settler requested in writing of the trustee the whole principal of the fund, stating in the writing that she deemed it necessary at that time for her comfort and support.   This request was acceded to by the trustee without question, and was in effect complied with, not literally by actually paying over or transferring the principal, but by a new written acknowledgment, signed by her and the trustee, that the latter had received and was possessed of her property, and that by her authority and request he agreed to hold and invest it, paying to her the income and also such portion of the principal, from time to time, as she might desire, and at her death to transfer all of the property then held to the executor of her will.

But it also appears from the petition, the allegations of which are admitted, that Richard S. Storrs — one of her two children to whom, by the terms of the original trust, what should remain of the fund after the payment upon her death of her debts and funeral expenses, was to go, share and share alike, if then living — had died on April 4, 1896, and that about April 16, 1896, her grandson George W. Montgomery called upon the trustee and stated to him that she then wished to create a new trust and to take up the old one, and to make a different disposition of the fund.   The trustee referred the grandson to an attorney as a proper person to consult in regard to such steps as were necessary, and thereafter her letter referred to, requesting of the trustee the whole principal of the fund, and stating that she deemed it necessary at that time for her comfort and support, was given to the trustee, and a copy of an instrument purporting to be her last will was shown to him.   Then, on May 21, 1896, the new trust instrument of that date was presented to him, and signed by him in duplicate, and he was at the same time informed that the two papers, the written request of April 16 and the new trust agreement of May 21, constituted a revocation of the first trust, and that a new trust was created, and that the property held by

him under the first trust had been revested in him under the second trust.*

The trustee had no personal interview with the settler after the making of the first trust, and never made to her, or to any agent or attorney for her, any actual delivery of the trust property, or any assignment, transfer, or bill of sale. She was a widow, and he had been the executor of her husband's will, and the property put in trust by the instrument of April 21, 1891, was about six thousand dollars in amount, and came from three policies of life insurance upon the deceased husband's life, which were among the assets of his estate. What other means than this money she had does not appear. She had only two children, a son and a daughter, each of whom had children, and there is no statement as to their pecuniary circumstances.

She left a will dated November 25, 1890, giving her wearing apparel, household furniture, gold watch, and silver ware to her daughter, and the residue of her estate to her son and daughter, share and share alike; also a codicil dated April 17, 1896, (the son having died on April 4, 1896,) revoking the legacies and devises given by the will, and bequeathing one thousand dollars to be equally divided between the children of her deceased son, and all the residue of her property real and personal to her daughter, but further providing otherwise if the daughter should die before her, which did not in fact happen, the mother dying on June 10, 1896, and her daughter surviving until September 2, 1896. There are now living three children of the daughter and three of the son. Two of the daughter's children are of full age, and one of them and all of the son's children are minors.

---

* The letter of April 16, 1896, stated that by the original instrument " I am entitled to such portion of the principal as may in my judgment be necessary for my comfort and support, therefore I hereby request of you at this time " a sum named, " or whatever may be the value of the principal, and which I deem necessary at this time for my comfort and support."

The new trust agreement, which was signed by both the trustee and Lemira Storrs, contained the following : " By authority from and at the request of said Lemira Storrs I hereby agree to invest, hold, and handle said funds, and pay over the income to said Lemira Storrs at her request, and also such portion of the principal from time to time as she may desire. It is also the wish of said Lemira Storrs that upon her death I shall pay or transfer to the executor named in her will all of said property which I may hold at that time, and I accept this trust upon said conditions."

Considering all these circumstances, it is difficult to decide whether what has happened constitutes a performance, or an ineffectual attempt to revoke the original trust.

On the one hand are the statements to the trustee, that the settler wished to create a new trust, and to take up the old one and make a different disposition of the fund, and that the documents of April 16 and May 21, 1896, constituted a revocation of the first trust.

On the other hand, the document of April 16 says nothing about a revocation, and is of the tenor which would be used if the whole principal of the fund were in fact necessary to the comfort and support of the settler, and she deemed it necessary for that reason to have the trust performed by placing the property back into her hands as her own.

It is not contended that the performance of the trust by placing the whole principal in her hands was in fact necessary to her support, and she did not in fact use it for her support, but, *uno flatu*, devoted it to founding a new trust. But by that new trust the trustee was to pay her such portion of the principal as from time to time she might desire, and she died within a few days after the new instrument was completed. If she had little other property than the fund, or was in merely moderate circumstances, there are possible situations in which her absolute ownership of the whole principal might be reasonably necessary for her " comfort and support "; as, for instance, the necessity of travelling abroad for her health, or of providing for an expensive surgical operation, or perhaps of providing a home.

The fact that, in the short interval between regaining her power over the fund and her death, she made no such use of the property, is not conclusive that her true purpose was not to use it in good faith, in some such way, for her comfort and support. While the right to call for " such portion of the principal as she in her judgment may deem necessary for her comfort and support" expressly makes her own judgment the test, we think that the provision implies the exercise of her honest judgment upon the question whether at the time the transfer to herself of the whole principal was necessary for her comfort and support. See *Hawkins* v. *Graham*, 149 Mass. 284. Little aid is given by decisions which have dealt with similar phrases, for the reason that what

is necessary for the comfort and support of a particular individual must depend so much upon the circumstances of the particular case.    See *Conant* v. *Stratton*, 107 Mass. 474.    See also *Minot* v. *Prescott*, 14 Mass. 496; *Stevens* v. *Winship*, 1 Pick. 318, 325; *Larned* v. *Bridge*, 17 Pick. 339; *Harris* v. *Knapp*, 21 Pick. 412; *Dodge* v. *Moore*, 100 Mass. 335; *Whitcomb* v. *Taylor*, 122 Mass. 243, 248; *Bamforth* v. *Bamforth*, 123 Mass. 280; *Hoyt* v. *Jaques*, 129 Mass. 286; *Hoxie* v. *Finney*, 147 Mass. 616; *Chase* v. *Ladd*, 153 Mass. 126; *Kent* v. *Morrison*, 153 Mass. 137; *Ladd* v. *Chase*, 155 Mass. 417, 421.

The general impression to be gathered from these cases is that, where an absolute discretion is not clearly given, to be exercised at the will of the person empowered to make a sale or appropriation of principal, an exercise of the power, to be valid, must be founded upon a reasonable judgment dealing with existing facts and reasonable anticipations of the future, and having due regard for the purposes for which the power was given, and also for the rights of those whose interests are injuriously affected by its exercise.

We do not now consider whether the words used in this instrument, "necessary for her comfort and support," may have a larger meaning than "necessary for her comfortable support." There is nothing to indicate that she called for the principal because she deemed its transfer to herself necessary to her contentment or peace of mind.   In her demand she makes the bald statement that she asks the principal which she deems necessary at this time for her comfort and support.

It is not necessary to impute bad faith to her in making the demand and statement.   The natural inference from the statements of the petition is that she was advised that she had power to revoke the trust, and, desiring to do that, executed such instruments as were prepared for that purpose by counsel who were of opinion that she had the right to revoke.

But after considering carefully all the circumstances, and being of the opinion that she had no right of revocation, we are brought to the conclusion that her request for the principal, accompanied by the statement that she deemed it necessary at that time for her comfort and support, was not in fact what it purported to be; that it was not founded upon her judgment of

what was necessary to her comfort or support, but was really an intended revocation of the trust, and a diversion of the fund to other uses than for her comfort and support, and contrary to the terms of the trust.

We are therefore of opinion that what was attempted by the transaction subsequent to the death of the son was unavailing, and that the petitioner should be directed to dispose of the fund in accordance with the terms of the instrument of April 21, 1891. That is, he is to pay the settler's just debts and funeral expenses, and, one of the settler's two children being dead at the time of her death, he is to divide what then remains in his hands among the six grandchildren.                    *So ordered.*