In the Matter of the Construction of the Will of HENRY W. MORSE, Deceased. MAY W. MORSE, Appellant; LINCOLN ROCHESTER TRUST COMPANY, as Executor and Trustee under the Will of HENRY W. MORSE, Deceased, et al., Respondents.

Fourth Department, May 7, 1952.

172

*Frederick Wiedman* and *Frederick Wiedman, Jr.,* for appellant.

*Henry J. Martens* for Lincoln Rochester Trust Company, as executor and trustee, respondent.

*Ray F. Fowler,* as special guardian for Nancy Morse, an infant, respondent.

WHEELER, J. This appeal involves the judicial construction of the will of Henry W. Morse, deceased, which was admitted to probate shortly after the death of decedent on April 27, 1949. The proceeding was instituted by the widow, May Wilson·Morse, who contends that under the will she was given the sole right to determine the amount of the principal trust funds which should be given to her for her support and maintenance.

The will, after giving all personal effects, including an automobile and the life use of the family home, to the wife, sets up a trust of the residuary estate for the benefit of the wife for her life, and upon her death the " remaining funds in the hands of the trustee " are given· to testator's grandchild, the daughter of testator's son by a prior marriage.

The portion of the will giving rise to the present controversy is as follows:

" FOURTH: * * *

" (a) To pay to or expend for my wife, May Wilson Morse, the net income therefrom during her lifetime. In the event that the income on my estate is not sufficient for the care, support and maintenance of my said wife, May Wilson Morse, then I hereby authorize and direct my executor or trustee herein named to pay to her such sums out of the principal as may be necessary for her care or maintenance, including the payment of taxes and repairs to be paid upon the house of which I have left to her the life use, or upon any other house purchased for her use, and also to pay from such residue the funeral expenses

of my said wife; it being my intention to provide amply for my said wife during her lifetime, and any request that she may make for any funds is to be honored by mv executor and trustee.''

The principal difficulty stems from the last clause of subdivision (a): '' it being my intention to provide amply for my said wife during her lifetime, *and any request that she may make for any funds is to be honored* by my executor and trustee.'' (Emphasis supplied.)

The petitioner-appellant, relying on *Matter of Woollard* (295 N. Y. 390), contends that under this clause of the will she is empowered to determine when and to what extent the trust principal should be invaded, and that neither the trustee nor the court can qualify or limit this authority.

In accordance with this contention she has formally requested of the trustee payment of $350 per month, in addition to taxes and repairs on the home, which request the trustee has declined. The trustee, in the exercise of its claimed discretion, has been paying the petitioner at the rate of $200 per month, in addition to the upkeep of the home.

In our view, the controversial clause is not to be construed literally to mean that '' any request * * * for any funds * * * is to be honored ''. We feel that it was not the intention of the testator to give his wife the absolute right in her untrammeled discretion to demand all of the principal and thus to completely destroy the trust. Such drastic power is not to be inferred in the absence of clear and definite expression by the testator (*Vincent* v. *Rix*, 248 N. Y. 76, 81–82), nor may a trust be destroyed under guise of power to add principal to income when necessary to provide support. (*Matter of Wentworth*, 230 N. Y. 176, 185.)

We believe that *Matter of Woollard* (*supra*) is distinguishable. There, the widow was given the income '' ' together with as much of the principal or corpus of my estate as she may deem necessary for her maintenance comfort and well being.' '' This clause, accompanied by no other limitations, prompted the Court of Appeals to state: '' Under the terms of the particular will no one may question or go behind such a determination and expression by her.'' In the dispositive portion of our will there appears to be a limitation on the invasion of the principal, the trustee being directed to pay from the principal such sum '' as may be necessary for her care or maintenance,'' thus limiting the invasion of the principal to '' care or maintenance.'' It, therefore, follows that '' any request

\* \* \* for any funds '' must be referable to and read with the limitation placed on the invasion of the principal.

While it appears that testator intended to provide generously and amply for his wife by the use of this very broad language, the authority given to her to request " any funds ", etc., is not without qualification.

The respondents' contention, with which the Surrogate has agreed, is based upon the premise that inasmuch as the will did not designate anyone to measure the extent to which trust principal might be invaded, it became a question of fact for judicial determination. (*Matter of Martin,* 269 N. Y. 305, 312–313.) We cannot accept this premise, nor do we agree with the conclusion that the expression of intention " amounts to advice to the court to deal with the wife's requests as liberally as possible under the circumstances of the trust." Such an interpretation would render meaningless the direct and mandatory language of the clause in question.

As we interpret the clause, the testator intended to constitute his wife as the sole judge of the amount necessary for her care and maintenance, but that by so doing he did not intend to give her an unlimited power to destroy the trust or to commit waste of the trust funds, to the detriment of the remainderman; rather, we are convinced, he intended that she would exercise her honest judgment and good faith considering the amount of the trust and the funds necessary for her care and maintenance. In other words, we construe the clause to mean that the trustee is bound to honor any reasonable request made by the wife for principal funds necessary for her " care or maintenance," provided the same is made in good faith and in the light of the circumstances of the estate and the standard of living formerly enjoyed by testator and his wife.

In the event that her good faith or the reasonableness of her request is challenged, as it has been here, an issue of fact arises which is a proper subject for judicial review. (*Matter of Wilkin,* 183 N. Y. 104, 113; *Swarthout* v. *Ranier,* 143 N. Y. 499, 504; *Matter of Briggs,* 101 Misc. 191, 202, mod. 180 App. Div. 752, mod. 223 N. Y. 677; *Vincent* v. *Rix,* 248 N. Y. 76, *supra.*)

The particular issue of fact was whether the request of $350 per month was unreasonable and made in bad faith. If reasonable and made in good faith, the trustee, as we have indicated, was bound to honor it. Presumptively, the request was made in the exercise of her honest judgment and the widow having made the request, as she was specifically authorized to do, the burden of showing bad faith or unreasonableness was upon

those who challenged it. (*Seaward* v. *Davis,* 198 N. Y. 415, 420; *Swarthout* v. *Ranier,* 143 N. Y. 499, *supra.*) Although the trustee was given no discretionary power to determine the amount, it, nevertheless, and undoubtedly in good faith, proceeded to do so. It also appears that the Surrogate has accepted and adopted the opinion of the trustee rather than the request made by the wife. We feel that this was not the proper approach to the problem, as it would appear that the *cestui que* has been required to assume the burden of showing the reasonableness of her request, rather than the burden of showing unreasonableness to have been cast upon those challenging it.

While it may appear to us that the request of $350 per month was somewhat larger than we might grant were the discretion ours in the first instance, under the circumstances disclosed by the evidence in this record, we cannot say that it was excessive or unreasonable, or that it indicated bad faith on the part of the widow. The amount of the trust estate was in excess of $40,000; the budgets submitted by the wife showed an eight months' average expense of maintaining herself in her suburban home of $356.58, and a fourteen months' average of $314.64. The wife was seventy-four years of age at the time of her husband's death, and she has testified that the amount requested is needed to maintain herself in the same standard of living to which she was accustomed while living with her husband. There is nothing in the record to refute this evidence other than the opinion of the trust officer representing the respondent trustee.

Under the state of facts as presented, it was not for the court to determine what was necessary for her support and maintenance but, rather, it had the duty to determine the primary issue of whether the request was unreasonable or made in bad faith. If, perchance, it could be determined that the demand was not in good faith or the exercise of an honest judgment, then and in that event it would fall to the court to determine what amount was reasonable under the circumstances.

Having reached the conclusion that this particular request of the widow dated February 11, 1950, was not unreasonable or made in bad faith, it follows that the trustee was duty bound to honor it; said monthly payment, less proper credits, to begin from the date of the request.

The decree, insofar as appealed from, should be reversed and the matter should be remitted to the Surrogate's Court of Monroe County, with directions to enter a decree in accordance with this opinion.

All concur. Present — TAYLOR, P. J., VAUGHAN, KIMBALL, PIPER and WHEELER, JJ.

Decree insofar as appealed from reversed on the law and facts and matter remitted to the Surrogate's Court of Monroe County for further proceedings in accordance with the opinion.