*Decision will be entered under Rule 50.*

ESTATE OF THEODORE GEDDINGS TARVER, DECEASED, THE CITIZENS AND SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57255. Filed June 8, 1956.

*William P. Congdon, Esq.*, for the petitioner.
*George W. Calvert, Esq.*, for the respondent.

**OPINION.**

Atkins, *Judge:*

*The Notice of Deficiency.*

The petitioner contends that since it made application under section 825 (a) [1] for a determination of the amount of estate tax, and as the respondent did not send the notice of deficiency until after

[1] Section 825 (a) of the Internal Revenue Code of 1939 provides:

SEC. 825. DISCHARGE OF EXECUTOR FROM PERSONAL LIABILITY.

(a) APPLICATION FOR DISCHARGE.—If the executor makes written application to the Commissioner for determination of the amount of the tax and discharge from personal liability therefor, the Commissioner (as soon as possible, and in any event within one year after the making of such application, or, if the application is made before the return is filed, then within one year after the return is filed, but not after the expiration of the period prescribed for the assessment of the tax in sections 874 and 875) shall notify the executor of the amount of the tax. The executor, upon payment of the amount of which he is notified, shall be discharged from personal liability for any deficiency in tax thereafter found to be due and shall be entitled to a receipt or writing showing such discharge.

the expiration of the period of 1 year, it is discharged from personal liability and the notice of deficiency is void as having been sent to an improper party. As we understand the petitioner, it contends that we should hold that it is not personally liable and also that a petition based on the notice of deficiency sent to it precludes our consideration of the estate tax liability of the estate.

The notice of deficiency was addressed to the executor, as such, and set forth the respondent's determination of a deficiency against the estate. It does not purport to determine a personal liability against the executor. Certainly the failure of the respondent to determine the amount of the estate tax within the period prescribed by section 825 would not relieve the estate from liability or preclude the respondent from issuing a notice of deficiency in regard to the liability of the estate. *Bessie M. Brainard*, 47 B. T. A. 947. Nor can there be any question that the executor of an estate is a proper representative of the estate for the purpose of receiving a notice of deficiency and filing a petition with this Court, whether or not such executor is personally liable for the tax. *Safe Deposit & Trust Co. of Baltimore, Executor*, 35 B. T. A. 259, affirmed on other issues (C. A. 4) 95 F. 2d 806. As stated, the notice of deficiency does not purport to determine a personal liability against the executor. Accordingly, we do not have before us the question of whether the executor is personally liable. Upon the record before us we hold only that the notice of deficiency was properly mailed to the bank in its capacity as executor and that the petition filed by the executor based upon such notice gives us jurisdiction to consider the estate tax liability of the estate.

The petitioner also alleges that any deficiency in estate tax should be assessed against the transferees of the property that is included in the estate, namely, the trustees of the 1936 and 1941 inter vivos trusts and of the testamentary trust. However, the notice of deficiency does not purport to assert any liability against such trustees as transferees, and accordingly the question of their liability is not before us in this proceeding.

### The 1936 Trust.

We think that the provisions of section 811 (c) (1) (C) and 811 (c) (2) [2] require that the value of the property in the 1936 trust be included in the decedent's gross estate.

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

    *      *      *      *      *      *      *

  (c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

    (1) GENERAL RULE.—To the extent of any interest therein of which the decedent has

The terminology "intended to take effect in possession or enjoyment at or after his death" has appeared in the various revenue acts through the, years and such language has been the subject of litigation many times in the Supreme Court.[3] The present view of the Supreme Court as to the meaning of this expression is well stated in *Fidelity-Philadelphia Trust Co.* v. *Rothensies,* 324 U. S. 108, as follows:

> Section 302 (c) itself provides for the inclusion within the gross estate of property "to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death." As we said in *Helvering* v. *Hallock, supra,* 309 U. S. at pages 110, 111, 60 S. Ct. at page 447, 84 L. Ed. 604, 125 A. L. R. 1368, this provision "deals with property not technically passing at death but with interests theretofore created. The taxable event is a transfer inter vivos. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment." Cf. *Reinecke* v. *Northern Trust Co.* 278 U. S. 339, 347, 49 S. Ct. 123, 125, 73, L. Ed. 410, 66 A. L. R. 397. *The taxable gross estate, in other words, must include those property interests the ultimate possession or enjoyment of which is held in suspense until the moment of the grantor's death or thereafter.* [Emphasis supplied.]

In the instant case the trust instrument provided that the net income of the trust should be paid to the decedent's daughter, Dora, for life with remainder over to her descendants. However, it was provided that if at the time of the grantor's death he had not created a trust fund in at least an equal amount for each of his other three daughters, and if the net value of his estate was greater than $40,000,

---

at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \* \*

(C) intended to take effect in possession or enjoyment at or after his death.

\* \* \* \* \* \* \*

(2) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.— An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term "reversionary interest" includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death), by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Commissioner with the approval of the Secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate.

[3] *May* v. *Heiner,* 281 U. S. 238 ; *Klein* v. *United States,* 283 U. S. 231 ; *Helvering* v. *St. Louis Union Trust Co.,* 296 U. S. 39 ; *Helvering* v. *Hallock,* 309 U. S. 106 ; *Commissioner* v. *Field's Estate,* 324 U. S. 113 ; *Commissioner* v. *Church's Estate,* 335 U. S. 632 ; *Spiegel's Estate* v. *Commissioner,* 335 U. S. 701.

then the trustee was to pay over the corpus to the trustee of the trust created by the grantor's last will and testament. Furthermore, it was provided that if the decedent's daughter, Dora, should predecease the grantor without having children or issue thereof surviving her, the property was likewise to go to such testamentary trustee. Accordingly, it is clear that the ultimate possession or enjoyment of the corpus of this trust was held in suspense until the moment of the grantor's death. Whether the designated beneficiaries would take in accordance with the terms of the trust depended upon the situation existing at the time of the decedent's death. We accordingly conclude that the transfer effected by the inter vivos trust was intended to take effect in possession or enjoyment at or after the decedent's death within the meaning of section 811 (c) (1) (C).

Section 811 (c) (2) (enacted by the Technical Changes Act of 1949) provides, however, with regard to transfers prior to October 8, 1949, that even though a transfer was intended to take effect in possession or enjoyment at or after the decedent's death the property transferred is not to be included in the gross estate unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of such property. Section 811 (c) (2) states that the term "reversionary interest" includes the possibility that property transferred by the decedent may return to him or his estate, or may be subject to a power of disposition by him.

We think that upon the happening of either of the two contingencies mentioned above, the corpus of the trust would, pursuant to the trust instrument, be subject to a power of disposition by the grantor, inasmuch as up to the time of his death he could alter his will and the provisions thereof regarding the testamentary trust under which the ultimate takers would be determined.

Here there is no showing that the value of the reversionary interest immediately before the death of the decedent did not exceed 5 per centum of the value of the property comprising the corpus of the trust. The burden of proof in this respect was upon the petitioner and in the absence of such proof we must assume that the value did exceed the necessary 5 per centum. *Estate of Frank W. Thacher*, 20 T. C. 474.

We are also of the opinion that the amount to be included in the decedent's estate on account of the property in the 1936 trust is the entire value of the property at the date of death and that such value is not to be reduced on account of the interest of Dora, measured by the life of Edith Stokes Tarver, as contended by the petitioner. Section 811 requires the inclusion in gross estate of the value of all

property to the extent of any interest therein of which the decedent made a transfer intended to take effect in possession or enjoyment at or after death. This wording, in the language of the Supreme Court in *Commissioner* v. *Field's Estate, supra,* requires that where "the corpus does not shed the possibility of reversion until at or after the decedent's death, the value of the entire corpus on the date of death is taxable." In that case the Court further said:

The estate tax is not based on the value of the reversionary interest of the decedent at the time of his death but on the value at the time of his death of the property to which that reversionary interest relates.

In this case Dora's right to any interest in the income or corpus of the 1936 trust was subject to contingencies that existed until the moment of the decedent's death. This situation requires the inclusion in the decedent's estate of the value of the entire trust corpus. *Estate of Frank W. Thacher, supra.* This conclusion is not in conflict with the case of *Dominick's Estate* v. *Commissioner,* 152 F. 2d 843, affirming a Memorandum Opinion of this Court. In that case the value of a beneficiary's right to income for a term certain, irrespective of the death of the decedent, was allowed as a reduction of the amount to be included in the decedent's gross estate, but no reduction was allowed on account of an additional interest that was contingent upon the beneficiary's survival of the decedent.

The respondent has determined that the value of the corpus of the 1936 trust at the date of death was $11,901.56 and that value is accepted by the petitioner as correctly measuring the full value of the corpus. We hold that the respondent correctly included the full value in the decedent's estate.

## The 1941 Trust.

The respondent included in the decedent's gross estate the amount tnat he determined was the value of the corpus of the 1941 trust, the Massee Apartments, less the value of the life estate of the decedent's widow. Although the petitioner assigns error as to this inclusion, it does not on brief argue against the inclusion as a matter of law but confines its argument to the matter of valuation.

It seems clear that under the provisions of section 811 (c) (1) (B) of the 1939 Code [4] the value of the interest in the Massee Apartments

---

[4] Section 811 (c) (1) requires that there be included in the gross estate of the decedent the value at the time of his death of all property :

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

    \*     \*     \*     \*     \*     \*     \*

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; \* \* \*

transferred by the decedent in 1941 should be included in the gross estate. Under the trust instrument the decedent-grantor retained for his life an interest precisely prescribed by the statute, namely "the right to the income from the property * * *." We sustain the respondent on this question of law. *Estate of George L. Shearer*, 17 T. C. 304.

There remains the question of the fair market value at the time of decedent's death of the Massee Apartments. The respondent determined the value to be $225,000, but by amended answer alleges that the value was $255,000 and prays for an increased deficiency The petitioner contends that the value was not in excess of $200,000.

We have set out in the findings, general facts concerning the property, including its location and condition, and the gross and net income derived therefrom. Both parties offered the testimony of expert witnesses as to the fair market value of the property. They took into consideration the factors that we have set out in our findings and based their opinions of value primarily on the expected rate of return from rentals. After taking into consideration all the evidence, including the testimony of the expert witnesses, we have concluded and found as a fact that the fair market value of the Massee Apartments on October 8, 1950, was $215,000.

The Massee property is to be included in the gross estate at the value of $215,000, less, however, the value of the life estate of the widow. The respondent determined the value of such life estate to be $22,045.02 and the taxpayer apparently does not contest that figure. In any event, there is no showing that the respondent's valuation of the life estate was in error. It follows that the respondent is not entitled to the claimed increased deficiency.

### The Marital Deduction.

The question presented is whether the petitioner is entitled to a marital deduction, under section 812 (e) (1) (F) of the Internal Revenue Code of 1939, based on the value of the residuary estate of the decedent which, by his last will and testament, he placed in trust.

Section 812 (e) (1) (F) provides for a marital deduction, in the case of an interest passing from the decedent in trust:

if under the terms of the trust the surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

* * * * * * *

if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

The petitioner contends that all the conditions prescribed by section 812 (e) (1) (F) have been met, but the respondent argues on brief that the surviving spouse did not have the power to appoint the entire corpus free of the trust to herself or her estate. The respondent apparently recognizes that an unlimited power in the surviving spouse to invade the corpus would qualify as a power of appointment within the meaning of the statute. See *Estate of Frank E. Tingley*, 22 T. C. 402, affd. (C. A. 1) 223 F. 2d 163. See also Regulations 105, section 81.47a (*c*) which speaks of "an unlimited power to invade" corpus as an example of a power to appoint such corpus, free of the trust, in favor of the surviving spouse within the meaning of the statute. Respondent contends, however, that the surviving spouse here did not have an *unlimited* power to invade corpus.

Section 81.47a of Regulations 105 further provides that:

The power in the surviving spouse must be a power to appoint the corpus to herself *as unqualified owner* or to appoint the corpus as a part of her estate, that is, in effect, to dispose of it to whomsoever she pleases. [Emphasis supplied.]

This provision of the Regulations is in accord with the intent of Congress, as evidenced by the Report of the Finance Committee on the bill which became the Revenue Act of 1948 (S. Rept. No. 1013, Part 2, 80th Cong., 2d Sess.), which enacted section 812 (e) (1) (F). That report contains the following statement regarding subparagraph (F):

These provisions have the effect of allowing a marital deduction with respect to the value of property transferred in trust by or at the direction of the decedent where the surviving spouse, by reason of her right to the income and a power of appointment, *is the virtual owner of the property.* This provision is designed to allow the marital deduction for such cases where the value of the property over which the surviving spouse has a power of appointment will (if not consumed) be subject to either the estate tax or the gift tax in the case of such surviving spouse.[5] [Emphasis supplied.]

We turn then to a consideration of whether, under the terms of the testamentary trust, the surviving spouse had the unlimited right during her life to invade the corpus as though she were the virtual owner of the property.

---

[5] In this connection it is to be observed that section 811 (f) (2) requires inclusion in the gross estate of property with respect to which any decedent has at the time of his death a general power of appointment created after October 21, 1942, but that under section 811 (f) (3) (A) the term "general power of appointment" does not include a power to consume, invade, or appropriate property which is limited by an ascertainable standard relating to the health, education, support or maintenance of the holder of the power.

The courts of South Carolina in construing wills follow the generally accepted principles that "the cardinal rule of construction is to ascertain and effectuate the intention of the testator" and "that in the construction of a will all of the provisions are to be considered and given effect so far as possible, and the true intent gathered from the four corners of the instrument." *Rogers* v. *Rogers*, 221 S. C. 360, 70 S. E. 2d 637, in which case the Supreme Court of South Carolina quoted from the case of *Smith* v. *Bell*, 6 Pet. 68, 74, as follows:

The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law.

The intent of the testator is to be gathered from the whole instrument, giving "due weight to all of its language, considered in the light of the circumstances known to the testator at the time of execution." *Shevlin* v. *Colony Lutheran Church*, 227 S. C. 598, 88, S. E. 2d 674. In ascertaining the testator's intent from the language used in the will "force and effect must be given to all parts of it, every clause, phrase, and word, if it can be done by any reasonable method of construction, so as to harmonize them with each other and with the whole." *Wates* v. *Fairfield Forest Products Co.*, 210 S. C. 319, 42 S. E. 2d 529. It was said in *Lemmon* v. *Wilson*, 204 S. C. 50, 28 S. E. 2d 792, 800, that "only a very strong reason can justify the treatment of any of the testator's words * * * as surplusage."

The part of the decedent's will with which we are most immediately concerned is Item III (5) (a) in which the trustee is authorized to pay to the surviving widow such sums out of the trust principal "as and when she may demand, for her use and/or for the use or benefit of our children as she deems advisable."

In the light of the rules of construction prevailing in South Carolina, it is our opinion that this language does not confer upon the surviving spouse an unlimited right to invade the corpus and appropriate it as virtually her own property. In reaching this conclusion we have considered all the terms of the will, set forth in detail in our findings. It seems clear to us, when the will is read as a whole, that the decedent intended that his surviving spouse should have the right to draw down only so much of the corpus as might be necessary for her personal use or for the use or benefit of the children, and that he contemplated that there would be an unused part of the corpus which should be retained for the benefit of his children. We are unable to find in the above-quoted provision or in any other provision of the will an intent to give the wife the right in her untrammeled discretion to demand all of the corpus and thus to completely destroy the trust. "Such drastic power is not to be inferred in the absence of clear and definite expression by the testator * * *."

*In re Morse's Will*, 280 App. Div. 171, 112 N. Y. S. 2d 392. Where an absolute discretion is not clearly given to the beneficiary an exercise of the power of invasion must be founded upon a reasonable judgment dealing with existing facts with due regard for the purposes for which the power is given and also for the rights of those whose interest may be injuriously affected by the exercise of the power. *Lovett* v. *Farnham*, 169 Mass. 1, 47 N. E. 246.

Throughout the will in the instant case the decedent indicated solicitude for his children, and a desire that they should be benefited by the trust property. Thus, the surviving spouse is required to report to the trustee the amounts appropriated for the use of any child for purposes of determining the amount of each child's share of the remainder of the trust property at the time of ultimate distribution. The decedent contemplated that even after the death of his wife, the trustee should sell any portion of any child's trust estate which might be necessary to support that child in the event of illness, misfortune, or other emergency. Furthermore, he contemplated that the corpus of each of certain trusts which he intended to set up during his life for the benefit of his children might under certain circumstances become a part of his testamentary trust. Such expressed intention of the testator regarding the future benefits for the children negatives the petitioner's contention that the surviving spouse was given an unlimited power to invade the corpus of the trust.

Our conclusion that the surviving wife was not granted an unlimited power to appropriate the property as if she were the owner thereof is in general accord with the views expressed by the courts of South Carolina in cases involving the powers of life beneficiaries who have also the right to use corpus. See *Lynch* v. *Lynch*, 161 S. C. 170, 159 S. E. 26, and *Blakely* v. *Blakely*, 155 S. C. 123, 152 S. E. 24.

The case of *Comer* v. *Citizens & Southern Nat. Bank*, 182 Ga. 1, 185 S. E. 77, which is quoted and relied on by the petitioner is not in point on the facts. There property was placed in trust for a child with power to use *and dispose of it* during his life as he might see proper. The court stated that the power given was much broader than the power to merely use the property, that it was "almost as broad as testator could make it" and that it gave the beneficiary power to consume, sell, mortgage, or give away the fee.

We conclude that the surviving spouse in the instant case did not have the power to appoint the entire corpus free of the trust in her favor, and that no marital deduction is allowable under section 812 (e) (1) (F) on account of the property passing to the testamentary trust.

In accord with our holding on this point is the recent case of *Matteson* v. *United States*, (N. D., N. Y.) 147 F. Supp. 535. In that

506

case the decedent left the residue in trust with the income payable to his wife for life, and with a provision that if the wife should find such income not sufficient—"and of its sufficiency she shall be the sole judge"—the trustees were to pay her so much of the trust corpus as she should desire. In holding that the transfer in trust did not qualify for the marital deduction the court said in part:

The only event which would allow the invasion of the corpus of the trust fund would be the insufficiency of the income as she decided it in good faith, and this seems far from a power to appoint the entire corpus free of the trust in her favor or to her estate without qualification as provided in the statute and regulations involved.

It seems clear to me, in the law of New York, that a trust as created here confers only a life estate with remainder over and not an absolute fee with power to dispose either by will or by sale. (*Terry* v. *Wiggins* 47 N. Y. 512, 516; *In the Matter of the Estate of Brower* 278 App. Div., 851, aff'd. 304 N. Y. 661. See also *Matter of Vanderbilt*, 281 N. Y. 297, 308). Equally so, it seems clear and logical that the testator here so intended from the wording of his will and the family circumstances present, despite the grant of power to invade if necessary. * * *

From a reading of the briefs filed in this case there does not seem to be any difference between the parties as to the existence of other factors necessary to qualify for the marital deduction, such as the entire trust income being payable to the wife at least annually, and the lack of any power of appointment in any other person. However, in view of our holding that the surviving wife did not have the necessary power of appointment of the corpus, we do not pass upon the question whether all the other factors enumerated by the statute have been satisfied.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

KERN, JOHNSON, and WITHEY, *JJ.*, dissent.