ESTATE OF HARRY A. ELLIS, DECEASED, HELEN R. ELLIS, BERNARD B. LARGMAN AND DAN DENENBERG, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55204. Filed June 26, 1956.

*Herman H. Krekstein, Esq.*, and *Gerald Krekstein, Esq.*, for the petitioners.

*Max J. Hamburger, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency in estate tax in the amount of $23,776.31. The principal issue is whether he erred in disallowing a claimed marital deduction. All of the facts have been stipulated.

Harry A. Ellis died testate on July 30, 1951, a resident of Philadelphia, Pennsylvania. His will was filed on August 3, 1951, with the Register of Wills, Philadelphia County, Pennsylvania. Letters testamentary were granted on the same day to Helen R. Ellis, Bernard B. Largman, and Dan Denenberg, as co-executors. These three persons were still acting in their respective capacities as executors at the time of the hearing in this proceeding. They filed an estate tax return for the estate with the then collector of internal revenue for the first district of Pennsylvania at Philadelphia, Pennsylvania.

Helen R. Ellis is also the surviving widow of the decedent. The last will and testament of the decedent reads in part as follows:

All the rest, residue and remainder of my estate, real and personal, more particularly my interest in the partnership by and between Albert E. Hughes, Jr., and myself, trading as Philadelphia Distributors, I give, devise and bequeath to my trustees hereinafter named, in trust, to hold, invest and reinvest the same, to collect the income, and, after paying all expenses incident to the management of the trust, to pay over the net income to my beloved wife, Helen R. Ellis, for and during the term of her natural life, in monthly installments. I direct that there be paid to my wife not less than the sum of Five Thousand Dollars ($5,000.00) per annum, and should the income be less than that sum, I direct that the deficiency shall be made up out of the principal of the trust. I further direct that, should my dear wife, Helen R. Ellis, require sum or sums in excess of Five Thousand Dollars ($5,000.00) per annum, that she, and she alone, shall be the judge of how much shall be required and the same shall be paid to her monthly, and, should the said sum in excess of Five Thousand Dollars ($5,000.00) be less than the income, I direct that the deficiency be applied against the principal of my trust; that upon the death of my wife, this trust shall terminate and I give, devise and bequeath one-half the principal, absolutely, unto the estate of my beloved wife, Helen R. Ellis, and the other half unto my dear children, Anita C. Denenberg and Marjorie J. Largman, and their heirs, share and share alike.

The widow did not elect to take against the will, and the estate was distributed in accordance with its terms. Pertinent provisions of section 812 (e) of the Internal Revenue Code of 1939 appear in the margin.[1]

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

Petitioners contend that the bequest in controversy qualifies for the marital deduction under both subparagraph (A) and subparagraph (F) of section 812 (e) (1). Their claim under (A) is limited to one-half of the value of the bequest (by reason of her one-half interest in the remainder), while that under (F) is that the entire value thereof qualifies for the marital deduction. Respondent contends that subparagraph (B) prevents the bequest from qualifying for the deduction under subparagraph (A), and that the power of the widow to invade principal does not constitute such a power, exercisable in all events, as is required by subparagraph (F). We examine first the claim with respect to (F), inasmuch as a determination in petitioners' favor on that point will make unnecessary a decision with respect to whether a part of the bequest may satisfy the requirements of (A).

The general purpose of the marital deduction permitted by section 812 (e) was to remove as far as possible the discrimination with respect to estate taxes existing between decedents of community property States and those of non-community property States. It was thought that the Revenue Act of 1942, although it had attempted to accomplish such end, had not succeeded well enough. See H. Rept. No. 1274, 80th Cong., 2d Sess., p. 4, 24, 1948–1 C. B. 241, 243, 260.

Subparagraph (A) provides generally that there may be deducted in arriving at the net estate the value of interests in property passing from the decedent to the surviving spouse. Subparagraph (B) then

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii))—

(iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(F) Trust with Power of Appointment in Surviving Spouse.—In the case of an interest in property passing from the decedent in trust, if under the terms of the trust his surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

(i) the interest so passing shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

(ii) no part of the interest so passing shall, for the purposes of subparagraph (B) (1), be considered as passing to any person other than the surviving spouse. This subparagraph shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

withholds from the benefits of (A) certain interests described in (B) as "terminable interests." Thereafter, subparagraph (F), as an exception to an exception, prevents the terminable interest rule of (B) from denying the benefit of the marital deduction in the case of certain transfers, which, but for the operation of (F), might be denied the deduction.

The purpose of subparagraph (F) is set forth in the report of the Senate Finance Committee as follows:

The provisions of subparagraph (F) of section 812 (e) (1) under the bill as it passed the House have been expanded in your committee bill. These provisions have the effect of allowing a marital deduction with respect to the value of property transferred in trust by or at the direction of the decedent where the surviving spouse, by reason of her right to the income and a power of appointment, is the virtual owner of the property. *This provision is designed to allow the marital deduction for such cases where the value of the property over which the surviving spouse has a power of appointment will (if not consumed) be subject to either the estate tax or the gift tax in the case of such surviving spouse.* [Italics supplied.]

S. Rept. No. 1013 Part 2, 80th Cong., 2d Sess., p. 16, 1948–1 C. B. 285, 342.

The intent of Congress, in enacting subparagraph (F) is thus, in general, to permit the marital deduction where a spouse, who is the income beneficiary for life of a trust created by the decedent, has in addition a power over the corpus of such extent that the value of the corpus remaining at the time of death of the surviving spouse will be includible in her gross estate. On this latter point, section 811 (f) of the Internal Revenue Code of 1939 provides in part as follows:

SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including * * *

\* \* \* \* \* \* \*

(f) POWERS OF APPOINTMENT.—

\* \* \* \* \* \* \*

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment * * *

(3) DETERMINATION OF GENERAL POWER OF APPOINTMENT.—For the purpose of this subsection the term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the general health, education, support or maintenance of the decedent shall not be deemed a general power of appointment.

Respondent's regulations (as amended) pursuant to the above legislation read in part as follows:

Regulations 105:

SEC. 81.24. PROPERTY SUBJECT TO POWER OF APPOINTMENT BY DECEDENT.—(*a*) *General.* * * *

(2) *Power of appointment.*—The term "power of appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, *if a transfer in trust provides that the beneficiary may appropriate or consume the principal of the trust, such power to consume or appropriate is a power of appointment.* * * *

(3) *General power of appointment.*—For purposes of this section, the term "general power of appointment", except as limited in paragraph (b), means any power of appointment exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate. * * *

A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard * * * shall not be deemed a general power of appointment. * * * *A power to consume, invade, or appropriate property for comfort, pleasure, desire, or happiness, is not a power limited by an ascertainable standard.* [Italics supplied.]

With respect to section 812 (e) (1) (F), the applicable regulations, as amended, provide in part as follows:

Regulations 105:

SEC. 81.47a. BEQUESTS, ETC., TO SURVIVING SPOUSE.—

* * * * * * *

(c) *Trust with power of appointment in surviving spouse.*— * * *

[The regulations set forth at this point certain conditions, five in number, prerequisite to the applicability of subparagraph (F). They are (1) the surviving spouse must be entitled to all income of the trust corpus for life; (2) such income must be payable at annual or more frequent intervals; (3) the spouse must have the power to appoint the entire corpus free of the trust, exercisable in her own favor or that of her estate; (4) the power must be exercisable by her alone, and in all events; and (5) such power must not be subject to a power in any other person to appoint any part of the corpus of the trust to anyone other than such surviving spouse.]

In order to satisfy conditions (3) and (4), the power of the surviving spouse * * * must fall within one of the following categories:

(i) a power so to appoint fully exercisable in her own favor at any time following the decedent's death (as, *for example, an unlimited power to invade*). [Italics supplied.]

Petitioners urge that the value of any part of the trust corpus unconsumed at the death of the widow in the instant case would, under the applicable statutes and regulations, be includible as a part of her estate for purposes of the estate tax. Respondent does not meet petitioners' contention on this point, and we think that petitioners are clearly correct therein. The power to invade corpus given to the wife by the will of her husband is not limited by any ascertainable standard. The will provides simply that should the wife "require" any amount in excess of $5,000 a year, "she, and she alone" should be the judge of how much should be required, and the same should be paid over to her monthly. We interpret these provisions as giving the wife an unlimited power to consume the corpus.

The above-quoted excerpts from the committee report convince us that it was the intent of Congress to permit the deduction sought in just such cases as the one before us. The language of the applicable statute is consistent with such intent, and the regulations under section 812 (e) (1) (F) expressly set forth as an example of a power coming within its meaning an unlimited power to invade corpus. Further, the respondent has recently ruled, in a case which in our view closely parallels the one now before us, that the unconsumed principal of the trust is part of the taxable estate of the surviving spouse, and that the value of such bequest as of the date of its creation qualifies for the marital deduction. Rev. Rul. 518, 1955–2 C. B. 384.

Cases cited by the respondent are distinguishable. In *Estate of Louis B. Hoffenberg*, 22 T. C. 1185, affirmed 223 F. 2d 470 (C. A. 2), we held that a devise failed to qualify for the marital deduction where the power given to the widow applied to only two-thirds of the principal, whereas section 812 (e) (1) (F) requires that the power extend to the "entire corpus." Cf. sec. 2056 (b) (5), I. R. C. 1954. *Estate of Arthur Sweet*, 24 T. C. 488, appeal pending (C. A. 10), and *Harrison P. Shedd*, 23 T. C. 41, appeal pending (C. A. 9), are distinguishable for similar reasons. In addition, the surviving spouse in the *Shedd* case was entitled to only two-thirds of the income during her lifetime. In *Estate of Edward F. Pipe*, 23 T. C. 99, appeal pending (C. A. 2), and *Estate of Michael Melamid*, 22 T. C. 966, the devises were *direct*, and not in trust, of legal life estates to the surviving widows. Section 812 (e) (1) (F) is clearly limited to trusts. Cf. sec. 2056 (b) (5), I. R. C. 1954. In *Melamid* there was also an ascertainable standard limiting the extent to which the widow might invade principal. The question as to whether subparagraph (F) might apply does not appear to have been raised. In any event, it was clear that it could not. In *Pipe* the petitioner attempted to show that there was a trust, on the theory that in New York the legal life tenant is designated as a "trustee" of the remainderman's interest. The widow, however, had a power to consume principal, and it was held, without actually passing upon petitioner's contention that a trust existed, that even if there were such a trust, it would apply only to principal remaining unconsumed at the death of the life tenant, and that the principal of such "trust" is too indefinite to permit us to assign any value thereto for purposes of the marital deduction.

In *Starrett* v. *Commissioner*, 223 F. 2d 163 (C. A. 1), the power of the widow to invade corpus was by express provision to cease if she became legally incapacitated or if any sort of custodianship were appointed over her or her estate. The Court of Appeals held, in affirming our decision in *Estate of Frank E. Tingley*, 22 T. C. 402, that as a result of the provisions terminating the power on such contingencies it was not exercisable "in all events." The affirming opinion

in the *Starrett* case also seems to suggest that where the testator, as far as he can, has given the surviving spouse an unlimited power, possible limitations upon such power arising only by operation of local law should not prevent the bequest from being held sufficient for purposes of section 812 (e) (1) (F). In that case, however, the decedent himself had seen fit to impose limitations in addition to those imposed by operation of law. Cf. 223 F. 2d at p. 167. Indeed, respondent himself seems to have recognized the distinction in Rev. Rul. 518, *supra*, in which he cites the *Tingley* case.

Our decision in *Estate of Theodore Geddings Tarver*, 26 T. C. 490, is distinguishable. There, the power to consume principal of a trust governed by South Carolina law, was interpreted, in the light of the instrument as a whole, as being subject to certain limitations. We do not so interpret the will in the present case, particularly in the light of the decisions of the Pennsylvania courts in respect of such powers. Under Pennsylvania law the only duty on the part of Mrs. Ellis in exercising her power is to exercise it "honestly." Cf. *In re Tyson's Estate*, 191 Pa. 218, 43 Atl. 131; *In re Davis' Estate*, 72 Pa. Super. 332. This "restriction" is, however, more apparent than real. It does not limit her spending or restrict her to any objective standard of living, but means only that the widow may not so deal with the property as to leave it unconsumed and yet prevent it from passing to those chosen by the testator to receive any such unconsumed remainder. This is no restriction on the right to consume, but merely a reminder that it is a power to *consume*, and not to preserve, and then devise or donate the corpus. Cf. *In re Brennan's Estate*, 324 Pa. 410, 416, 188 Atl. 160, 162; *Degenkolv* v. *Daube*, 143 Pa. Super. 579, 18 A. 2d 464.

In *In re Tyson's Estate*, *supra*, the court said (191 Pa. at p. 226, 43 Atl. at p. 133) :

The extent of the widow's consumption of the estate was within her own control. Her decision was without appeal, but it must have been honestly reached in accordance with the purpose the testator intended, and not merely colorably to defeat his will. She had power to carry out his intentions by sale, transfer and consumption of the proceeds in such a way as to leave nothing at his death. But a transfer with intent not to consume * * * but to preserve for others * * * and change the beneficiaries after her * * * to others of her own selection would be a fraud on the testator and his will. * * *

This rule applies to every such power to invade or consume the principal, however broad. If its operation is to prevent a power subject thereto from being "unlimited" we must, in effect, hold that in Pennsylvania it is impossible to form a trust subject to a power to consume corpus which may qualify for the marital deduction under section 812 (e) (1) (F). This we are not prepared to do.

An unlimited power to consume principal of a trust satisfies the test of a power of appointment under section 812 (e) (1) (F). We

can find nothing either in the will or in applicable local law limiting the discretion of Mrs. Ellis, and we shall not supply one by conjecture. We are satisfied that she had an unlimited power to invade and consume principal to the extent, if she in her uncontrolled discretion so desired, of exhausting the trust corpus and thereby destroying the remainders over. Cf. *In re Rumsey's Estate*, 287 Pa. 448, 135 Atl. 119; *In re Arrott's Estate*, 36 D. & C. 546.

For the foregoing reasons, we conclude that respondent erred in disallowing the marital deduction. Subject to the limitation set forth in section 812 (e) (1) (H), petitioners must prevail here.

The only remaining issue, not settled by the stipulation, relates to a deduction for legal expenses in resisting the deficiency. The Commissioner allowed a deduction in the amount of $1,000. The stipulation provides that "Subject to producing evidence that additional counsel fees and expenses have been incurred in resisting the imposition of the aforesaid deficiency, petitioners are also entitled to a deduction in such amount from total gross estate." The parties may, under Rule 50, reach an agreement as to such additional amount, if any. If they should fail so to agree, the matter may be disposed of under Rule 51.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

OPPER, *J.*, dissenting: This case seems to me not only difficult to reconcile with *Estate of Edward F. Pipe*, 23 T. C. 99, but also inconsistent with *Matteson* v. *United States*, (N. D., N. Y.) 147 F. Supp. 535, and *Estate of Theodore Geddings Tarver*, 26 T. C. 490. In all three cases the widow was given not only income for life but some measure of the power of invasion. In the *Pipe* case, where there was no trust, this power was extremely broad. In the *Matteson* case authorization was given to consume if the wife "find that the income * * * is not sufficient," a matter of which she was made the sole judge. The latter situation seems to me almost identical with that in the case before us. In the *Matteson* case Judge Foley says: "The limitation of good faith and honest judgment on the part of the surviving spouse is carefully preserved. *Such limitation is incompatible with a power to dispose by appointment.*" (Emphasis added.) And that a similar restriction would be placed upon a widow in Pennsylvania appears from the present opinion itself which describes the limitation as meaning "that the widow may not so deal with the property as to leave it unconsumed and yet prevent it from passing to those chosen by the testator to receive any such unconsumed remainder." Yet in the same breath the conclusion is reached that the widow's power is "unlimited."

Any unconsumed property would pass under the original testator's will, not by the exercise or failure to exercise any power of appointment by the widow. *In re Tyson's Estate*, 191 Pa. 218, 43 Atl. 131; *In re Brennan's Estate*, 324 Pa. 410, 188 Atl. 160. Cf. *Estate of Laura Brown Chisholm*, 26 T. C. 253. The present opinion makes this power to consume the equivalent of the statutory "power of appointment" as well as of the "unlimited power to invade" to which the regulation refers. The meaning so attributed to the latter term is inconsistent with such other language in the regulation as: "The power in the surviving spouse must be a power to appoint the corpus to herself as unqualified owner or to appoint the corpus as a part of her estate, that is, in effect, to dispose of it to whomsoever she pleases." This the widow clearly could not do under this trust as it would be interpreted under the applicable local law. And in construing the statutory conditions including that the surviving spouse must have the power, exercisable in favor of herself or of her estate, "to appoint the entire corpus free of the trust," the regulation requires that "regard is to be had to the applicable provisions of the law of the jurisdiction governing the administration of the trust."

The present opinion takes the words out of section 812 (e) (1) (F)—

This subparagraph shall be applicable only if * * * such power * * * to appoint the corpus * * * is exercisable * * * in all events.

combines them with the Pennsylvania law, *In re Tyson's Estate*, *supra*, which makes it clear that it is not exercisable as a power of appointment at all, see *Matteson, Executrix* v. *United States*, *supra*, still less exercisable "in all events;" and concludes in effect that this property is qualified for the marital deduction because it will if not consumed by subject as the widow's property to either the estate tax or the gift tax, when in fact this is highly improbable, *Barritt* v. *Tomlinson*, (S. D., Fla.) 129 F. Supp. 642, and no cases are cited to sustain it.

HARRON and WITHEY, *JJ.*, agree with this dissent.