ESTATE OF LAURA BROWN CHISHOLM, THE CLEVELAND TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF HARVEY H. BROWN, JR., THE CLEVELAND TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51842, 54514. Filed May 11, 1956.

*Horace Andrews, Esq.,* and *Lad J. Roth, Esq.,* for the petitioners. *James F. Kennedy, Jr., Esq.,* for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency in estate tax of $18,406.79 in the case of the Estate of Laura Brown Chisholm and one of $21,666.13 in the Estate of Harvey H. Brown, Jr. The main issue, common to both cases, is whether property is to be included in each estate under section 811 (f). A further issue in the Brown case is whether an income tax overpayment shown on the joint income tax return of Harvey H. Brown, Jr., deceased, and his surviving spouse, which overpayment was applied against taxes owed by the widow for the following year, was includible in the decedent's gross estate. All of the facts have been stipulated and are found in accordance with the stipulation.

An estate tax return for each estate was filed, one with the collector and the other with the district director of internal revenue for the eighteenth district of Ohio.

The decedents were sister and brother. Laura died on August 14, 1949, and Harvey on August 11, 1950. Each was a beneficiary under a trust dated October 15, 1921, created by their aunt, Florence C. Brown. It was provided in the trust, *inter alia*, that the net income from one-third of the trust property was to be paid, after the death of the settlor, to her brother, the father of the present decedents, and upon his death or his failure to survive the settlor, the income from that one-third was to go to his children during their lifetimes and, upon request, any child could have up to one-third of the principal of his or her share. The brother died and Laura and Harvey requested and received one-third of the principal of their shares. The present controversy relates to the remaining two-thirds of the principal of their shares.

The trust instrument contained the following three paragraphs, which will be referred to hereafter for convenience as paragraphs 1, 2, and 3.

I hereby authorize and empower my said nephews and nieces respectively by last will and testament executed at any time after the date hereof, to dispose of the property constituting the share of the trust estate held, or which but for his or her death would be held, for his or her benefit hereunder, or so much thereof as may remain undistributed, (subject always to the life estate therein of my brother, HARVEY H. BROWN),—to and among his or her issue and/or widow or widower, in such amounts or proportions and upon such terms and conditions as he or she may by such last will and testament nominate, designate and provide for; and upon the death of any one or ones who have exercised such power of testamentary designation and disposition, the Trustee shall thereupon, (in case said HARVEY H. BROWN be deceased, otherwise after his death), pay over and distribute the property constituting the share of such deceased one or ones respectively, or hold and dispose of the same, in accordance with such designation and provision.

In event of the death of any of my said nephews or nieces without exercising such specific power of appointment and disposition, then the property constituting the share of the trust estate held hereunder for any such deceased one or ones' or which but for his or her death would be so held, shall thereupon be turned over by the Trustee hereunder, (in case my brother, HARVEY H. BROWN, be deceased, otherwise after his death), to such person or trustee as such deceased nephew or niece shall have designated by last will and testament, or otherwise constituted, to receive, hold and dispose of the estate of such deceased nephew or niece,—to be dealt with and distributed by the person or trustee to whom it is so turned over, for the benefit of the legatees or beneficiaries designated and/or provided for by such deceased nephew or niece, to receive the benefit of his or her separate estate. It being my intention that the beneficiaries designated or provided for by any nephew or niece so dying, to receive the benefit of the property constituting his or her separate estate, shall similarly and upon the same terms and subject to the same provisions, receive the property constituting the portion held for such deceased nephew or niece hereunder, as though such property had been a part of the separate estate of such nephew or niece.

In the event of the death of any of my said nephews or nieces, without having exercised the foregoing specific form of appointment and without having provided for the disposition of his or her estate, either by last will and testament or by the transfer and delivery of such estate to a trustee or trustees, the portion of the trust estate held or intended to be held for his or her benefit, or so much thereof as may remain undistributed, shall (subject always to the life estate therein of HARVEY H. BROWN, so long as he shall survive), vest in the surviving issue of such nephew or niece so dying, and in default of issue, in such persons as constitute his or her next of kin of my blood, under the statutes of the State of Ohio at such time in force and effect.

Laura's will, dated February 25, 1949, included the following provision:

ITEM III. Under the terms of a certain Trust Agreement entered into on October 15, 1921, by Florence C. Brown with The Cleveland Trust Company, of Cleveland, Ohio, as trustee, I was granted, on page 7 of said Trust Agreement, authority and power, by last will and testament, to dispose of the property constituting the share of said trust estate held, or which but for my death would be held, for my benefit, or so much thereof as may remain undistributed at the time of my death, to certain persons therein specified. I hereby exercise said power, and appoint said property above specified and direct its distribution to my issue *per stirpes* surviving at the time of my death.

Harvey's will, dated January 21, 1949, contained a provision which, for present purposes, was substantially identical with the above.

No part of the appointed property was reported in the gross estate of either decedent. The Commissioner, in determining the deficiencies, included the value of that property in the gross estate under section 811 (f).

Section 811 (f) includes in the gross estate "property with respect to which decedent exercises a general power of appointment" by will "but the failure to exercise such a power * * * shall not be deemed an exercise thereof." It defines a general power of appointment as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate" with exceptions not here material.

It is obvious that Laura and Harvey, by their wills, intended to exercise the power given in paragraph 1 of the Florence C. Brown trust, which did not give to them a general power of appointment within the definition of section 811 (f), since it limited them in the disposition of their remaining share of the trust principal to dispositions among their issue and surviving spouse. Sec. 811 (f); see *Morgan* v. *Commissioner*, 309 U. S. 78. Thus, if the first paragraph stood alone, this first issue would have to be decided for the petitioners.

The Commissioner's contention is that all three of the above quoted paragraphs of the Florence C. Brown trust must be read as a whole, and when so read it is clear that each of the present decedents had a general power of appointment under paragraph 2. The benefits of

paragraph 2 are not expressly stated therein in terms of a power, and the reasoning of the Commissioner must be that the power arises by indirection in that each decedent could fail to exercise the limited power of appointment given in paragraph 1 and thereby have the remaining interest in the trust property go to those persons chosen and named by them in their wills as recipients or beneficiaries of their own property. Each succeeding paragraph of the three was intended to apply only as an alternative in case the preceding one or ones did not apply. Thus paragraphs 2 and 3 merely provide for the disposition of the remaining shares of the trust without direct action by the nephew or niece in case he or she did not exercise the power given in paragraph 1. The decedents could not specifically dispose of the remainder interest in the trust property in their wills other than by exercise of the limited power granted in paragraph 1.

An ingenious lawyer might possibly have devised a will under which each decedent could have taken advantage of paragraph 2 in such a way as to amount to the exercise of a general power of appointment within the declaration of section 811 (f). However, it would not be simple and perhaps the difficulties might be insurmountable. The decedents could exercise no power over the trust property in favor of themselves or, if their estates were solvent, to pay their creditors or the creditors of their estates. Complications would arise unless each was willing to lump his entire estate and dispose of it by percentages rather than by fixed amounts. They would have to allow the disposition of the trust property to parallel exactly the disposition of their own properties. They could not separate the two. Here, in any event, the property did not pass under paragraph 2 and failure to exercise any power there given is, under section 811 (f), not an exercise of that power. Thus the question of what power was given under paragraph 2 is moot.

It is reasonably obvious that Florence intended that neither paragraph 2 nor paragraph 3 should have any application except in case the nephew or niece died "without exercising such specific power of appointment" as was given in paragraph 1. Laura and Harvey deliberately exercised the power of appointment given them in paragraph 1. Section 811 (f) applies only to "property with respect to which decedent exercises a general power of appointment." Here neither decedent exercised a general power of appointment, and what they did was quite inconsistent with any application of paragraph 2. The Commissioner's argument is not only labored on the facts of this case but is inadequate to support his determination. The property in each case passed under a limited power as opposed to a general power of appointment.

Harvey's widow and his executor filed a joint income tax return which the stipulation says was for the tax year 1950. The return indicated that Harvey had died on August 11, 1950. It reported an overpayment for that year of $6,306.78, and it was stated on the return that the makers of the return wanted that amount credited on the 1951 estimated tax of Edith Gardner Brown. She was the widow of Harvey. The taxes paid as shown on the return consisted of withholding tax and payments of estimated tax, all pertaining to Harvey. Those taxes were paid from his separate funds. The overpayment of $6,306.78 shown on the 1950 joint return was credited by the collector on the 1951 tax of Edith.

The $6,306.78 was not reported in the estate tax return of Harvey as a part of his gross estate. The Commissioner, in determining the deficiency, included it in the gross estate under section 811 (a).

The entire taxes on the income of Harvey and his wife for 1950, as disclosed on the return filed for that year, were paid by Harvey. He was dead at the time the return was filed and of course did not join in filing it. However, the type of return that was filed for that period is immaterial as is the crediting of the overpayment as requested on that return. The fact is that Harvey had overpaid not only his own taxes but those of himself and his wife. The resulting overpayment was really his. It was valuable property and a part of his estate at the time he died. It was includible in his estate under section 811 (a), and incidentally would have been includible in his estate even if it represented jointly held property since he had supplied the entire consideration therefor. See sec. 811 (e); *Estate of Milton Sills*, 35 B. T. A. 815.

The Commissioner has allowed a marital deduction on account of tax prepayment to the extent that it otherwise qualifies, and there seems to be no remaining issue in regard to that item.

*Decisions will be entered under Rule 50.*