ESTATE OF ELIZABETH G. SWEZEY, DECEASED, THEODORE G. BUSHELL and RICHARD A. SCHOENFELD, EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Swezey v. Commissioner
Docket No. 757-75.
United States Tax Court
T.C. Memo 1976-361; 1976 Tax Ct. Memo LEXIS 45; 35 T.C.M. (CCH) 1637; T.C.M. (RIA) 760361; November 29, 1976, Filed Theodore G. Bushell, for the petitioners. Paul E. Vignone, for the respondent. *46 SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in the estate tax of the Estate of Elizabeth G. Swezey in the amount of $5,604.57. The issues for decision are: (1) Whether certain gifts made by the decedent to her nieces and nephews in March 1969, which was within 3 years prior to her death, are includable in her gross estate under section 2035, I.R.C. 1954, [1] as gifts in contemplation of death; (2) whether refunds of decedent's Federal and New York State income taxes for the year 1971 are includable in her gross estate; and (3) whether interest receivable on a note held by decedent at the date of her death is includable in her gross estate. All of the facts have been stipulated and are found accordingly. Elizabeth G. Swezey (decedent) died on June 11, 1971. Theodore G. Bushell and Richard A. Schoenfeld, the executors of decedent's estate, resided at Northport, New York and Patchogue, New York, respectively, at the date of the filing of the petition in this case. An estate tax return for decedent's estate was filed *47 by her executors on February 18, 1972, with the Andover Service Center of the Internal Revenue Service. Decedent was born on September 13, 1884. The general information on the estate tax return showed the cause of decedent's death to be arteriosclerosis, that her death occurred at the Fairlawn Rest Home in East Northport, New York, and the length of her last illness was 24 hours. It showed that decedent was single and that her occupation was "Officer - Swezey Fuel Co." On October 11, 1967, decedent executed a will in which she bequeathed her home at 522 East Main Street, Patchogue, Suffolk County, New York, to her sister, Marie Barber, and her nieces, Elizabeth B. Bushell and Nancy Schonefeld, as tenants in common. She left certain accounts in savings banks and certain stock to her sister, Marie Barber, certain stock to Louise Gilmore, Elizabeth B. Bushell and Nancy Schoenfeld, and the stock she owned in Swezey Fuel Company, 50 percent to her sister, Marie Barber, and 25 percent to each of her nieces, Elizabeth B. Bushell and Nancy Schoenfeld. She provided for a trust of $5,000 for Robert McMullen, and made the following cash bequests: Marie Barber
$5,000
Elizabeth B. Bushell
2,000
Nancy Schoenfeld
2,000
Suzanne Zanazzi
1,000
Gary Zanazzi
1,000
Jeffrey Zanazzi
1,000
Louise Gilmore
1,000
Dorothy Ashmead
1,500
Hazel Brush
1,500
Gertrude Tobin
1,500
Robert B. Swezey
1,000
Ruth Alfred
750
*48 Decedent left the residue of her property to her sister, Marie Barber. On March 5, 1968, decedent received a deed to a house at 58 Rose Avenue, Patchogue, New York, which recited that the consideration paid for the property was $27,000. On October 25, 1968, decedent as seller entered into a contract with Friendly Ice Cream Corporation to sell to that corporation for $40,000 her property located at 522 East Main Street, Patchoque, Suffolk County, New York. On March 25, 1969, the closing of the sale of the property located at 522 East Main Street, Patchoque, New York, was held. On March 26, 1969, decedent executed a will in which she revoked all prior wills or codicils thereto. In this will, which was the will probated after decedent's death, she (1) left her personal effects and furnishings to her nieces, Elizabeth Bushell and Nancy Schoenfeld; (2) left cash legacies to "the following named persons provided that they shall be in my employ at the time of my decease: Sara Messa
$1,000.00
Ruth Alfred
750.00
Helen Hempel
100.00;" (3) made provision for a trust for Robert McMullen of $4,000; and (4) left the residue of her estate 42-1/2 percent to her niece *49 Elizabeth B. Bushell, 42-1/2 percent to her niece Nancy Schoenfeld, and 15 percent to her niece Louise Gilmore.Other than the three cash bequests heretofore set forth, no other cash bequests were made in this will. On March 27, 1969, decedent made gifts to her nieces and nephews in the following amounts: Louise Gilmore
$2,500
Elizabeth Bushell
2,500
Nancy Schoenfeld
2,500
Hazel Brush
1,500
Dorothy Ashmead
1,500
Gertrude Tobin
1,500
Suzanne Zanazzi
1,000
Gary Zanazzi
1,000
Jeffrey Zanazzi
1,000
Robert Swezey
200
On the ledger page containing the stubs of the checks drawn to Luise Gilmore, Elizabeth Bushell and Nancy Schoenfeld the following notation appeared in decedent's handwriting: "Gifts from myself now instead of later in my will." On the ledger page containing the stubs of the checks drawn to Hazel Brush, Dorothy Ashmead and Gertrude Tobin the following notation appeared in decedent's handwriting: "Gifts in place of leaving same in will." On the ledger page which contained the stubs of the checks drawn to Suzanne Zanazzi, Gary Zanazzi and Jeffrey Zanazzi the following notation appeared in decedent's handwriting: "Gifts given now instead *50 of later in will." During the period September 17, 1968 through May 28, 1969, decedent drew checks to various individuals that bore notations such as "garage in full," "pruning etc.-58 Rose Ave.," "screen storm windows-upstairs," "repairs," "storm windows," "(electrician) heating unit in pantry (material & labor)," "pulled out old trees & shrubs, replaced with new-carted away," "spackling & touchup-dining room," "repair front stoop, new sidewalk, place screen on gutters," and "picking up & planting the 2 Hemlock trees." On November 12, 1968, decedent drew a check for $3.43 to Readers Digest Book Club; on April 21, 1969, she drew a check for $4 to Better Homes and Gardens; and on May 1, 1969, she drew a check for $3.97 to Readers Digest Association. Respondent in his notice of deficiency increased decedent's gross estate by adding to the one item reported on "schedule F--Other Miscellaneous Property" a total of $4,260.34, explained as follows: Item 2 (added)
It is determined that a refund of 1971 Federal
Income Tax in the amount of $1,601.49 is includible
in the gross estate.
Item 3 (added)
It is determined that a refund of 1971 New
York State Income Tax in the amount of $1,433.32 is
includible in the gross estate.
Item 4 (added)
It is determined that interest in the amount
of $1,225.53, receivable at date of death of decedent,
on a loan receivable from Swezey Fuel Company, Inc.,
is includible in the gross estate.
*51 Respondent also increased the gross estate of decedent as reported on "Schedule G-Transfers During Decedent's Life" by the amount of $15,200 which he explained as consisting of the 10 transfers made by decedent on March 27, 1969, which he determined were made in contemplation of death and therefore includable in her gross estate under section 2035. Section 2035(a) provides that a decedent's gross estate shall include the value of the decedent's interest in all property transferred by decedent in contemplation of death. Section 2035(b)[2] provides that if a decedent within a period of 3 years ending with the date of his death transferred property without adequate consideration, such transfer shall, unless show to the contrary, be deemed to have been made in contemplation of death. *52 The facts here show that decedent made cash gifts to her nieces and nephews within a period of less than 3 years preceding the date of her death. Therefore, under section 2035(b) these transfers shall be deemed to have been made in contemplation of death unless show to the contrary. Petitioners here argue that the facts that decedent purchased a new house only about a year prior to the date she made the gifts, and made repairs to the house and grounds at approximately the same time she made the gifts, indicate that the gifts were made by decedent not in contemplation of death but rather with living motives. Petitioners further argue that the fact that decedent subscribed to magazines and made a purchase from a book club at approximately the same time the gifts were made also indicates that the gifts were not made in contemplation of death. Respondent takes the position that the facts that decedent made a new will eliminating bequests to the same individuals to whom the gifts were made at approximately the same time she made the gifts and made notations on her check ledger indicating that the gifts were a substitute for bequests, indicate that the gifts were made in contemplation *53 of death. Section 20.2035-1(c), Estate Tax Regs., [3] in defining the phrase "in contemplation of death" states that it does not have reference to the general expectation of death such as is entertained by all persons but is not restricted to an apprehension that death is imminent or near. This regulation provides that a transfer of property is prompted by the thought of death if it is made for the purpose of avoiding death taxes, as a substitute for a testamentary disposition of property, or for any other motive associated with death. The regulation provides that the physical and mental condition of decedent and all other facts and circumstances surrounding the gift ought to be scrutinized in determining the thought that prompted the disposition. *54 The cases also uniformly hold that the intent or motive of the transfer is determinative of whether the transfer is in contemplation of death and that in determining the motive for the transfer all the circumstances existing at the time of the transfer must be considered. United States v. Wells,283 U.S. 102 (1931); Allen v. Trust Co. of Georgia,326 U.S. 630-636 (1946), Estate of Sumner Gerard,57 T.C. 749, 759 (1972); Bel v. United States,452 F.2d 683, 687 (5th Cir. 1971). In Estate of Oliver Johnson,10 T.C. 680, 688 (1948), we listed as among the factors to be considered and weighed in determining the dominant motive of decedent in making intervivos transfers of property the age of decedent at the time of the transfers, the state of decedent's health at that time, the intervals between the transfers and the date of decedent's death, the amount of property transferred in relation to the wealth of decedent, decedent's outlook on life, whether the transfers were part of a general testamentary scheme, the relationship of the donees to decedent, the prior policy of decedent with respect *55 to making gifts, and decedent's attitude toward and reason for transferring the property. As we pointed out in Estate of Alvin Hill,64 T.C. 867, 877-878 (1975), any gift made within the 3-year period preceding death is presumed to have been made in contemplation of death, but this presumption may be rebutted if it can be shown that an intervivos gift made by a decedent was not intended to be a substitute for a testamentary gift. The facts in this case were fully stipulated and there is little to aid us in making the determination of the motive of decedent in making the gifts. However, the evidence that is present indicates that the gifts were substitutes for testamentary dispositions. Statements to this effect were noted by decedent on her check ledger at the time the checks for the gifts were drawn. Decedent revised her will the day before she made the gifts to eliminate cash bequests to the individuals to whom the gifts were made. Several of the donees of the gifts were the persons who were the beneficiaries under decedent's will. The donees were decedent's nieces and nephews who would logically be the natural objects of the bounty of a single person. *56 Decedent was 84 years old at the time the gifts were made. There is nothing in the record to show the state of decedent's health at the time the gifts were made or her outlook on life. The fact that a year prior to making the gifts decedent had purchased a new home and received settlement on the sale of her old home only a few days prior to making the gifts is no indication of a motive connected with life in the making of the gifts. Without any further information as to why decedent purchased a house at 58 Rose Avenue, Patchoque, New York and sold a house at 522 East Main Street, Patchoque, New York, there is no basis to assume that these actions had any connection with or bearing on decedent's thoughts as to her life expectancy or her attitude toward life in general. Certainly the fact that decedent had some repairs made to the home she purchased is not indicative of decedent's motive in making the gifts or her outlook on life, nor is the fact that she subscribed to certain magazines and purchased certain books. It is true, as petitioners point out, that no one factor is controlling in determining the motive of a decedent in making intervivos gifts. However, the *57 age of decedent when the gifts were made and the fact that she considered the gifts as substitutes for testamentary dispositions are factors to be considered in determining whether the gifts were made in contemplation of death. On the basis of the record as a whole, we conclude that the gifts made by decedent on March 27, 1969, were made in contemplation of death within the meaning of section 2035. This record shows nothing with respect to the tax refunds which respondent determined to be includable in decedent's estate. In Estate of Laura Brown Chisholm,26 T.C. 253, 257 (1956), we held that a refund of Federal income tax for the year in which the decedent died was valuable property properly includable in decedent's estate. [4] Neither party has called our attention to any case involving a refund of New York State income tax, nor have we found one. However, the same reasoning which would require the inclusion in decedent's estate of a refund due with respect to Federal income tax would be applicable to State income tax absent any showing to the contrary. *58 Petitioners argue that the interest on the note which respondent included in decedent's estate was not due and collectible at the date of decedent's death. However, there is no evidence in this record to support petitioners' argument that the interest as determined by respondent was not due and collectible at the date of decedent's death. Paragraph 10 of the Supplemental Stipulation of Facts in this case reads as follows: Attached hereto as Joint Exhibit 12-L is a letter from Frank B. Zanazzi to Richard Schoenfeld dated December 15, 1975. The respondent does not stipulate to the truth of the statements made in this exhibit. Furthermore, the respondent objects to the introduction of these statements into evidence on the grounds of hearsay. When the stipulation was offered, respondent objected to the receipt of Exhibit 12-L and the objection was sustained. Petitioners' counsel attempted to support the receipt of this letter as proof of the date on which interest on the loan from decedent to Swezey Fuel Co., Inc. was due on the grounds of the difficulty of having the witness appear and testify. The Court sustained respondent's objection to the receipt in evidence of the *59 letter at the time the stipulation was received. Petitioners' counsel was therefore aware of the necessity of producing proof, if he had any to produce, that interest on decedent's loan to Swezey Fuel Co., Inc. to the date of decedent's death was not properly includable in decedent's estate. Petitioners cite a number of New York cases with respect to when rights accrue under various contracts. However, these cases are of no help in the instant case since the record here does not contain a copy of the note from Swezey Fuel Co., Inc. which decedent held at the date of her death or any other evidence from which we can ascertain the rights decedent had under that note. Because of petitioners' failure to produce any evidence to show error in respondent's inclusion in decedent's estate of interest receivable at the date of decedent's death of $1,225.53, we sustain respondent's inclusion of this interest in decedent's estate. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. * * *
(b) Application of General Rule.--If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, rel inquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.↩
3. Sec. 20.2035-1 Transactions in contemplation of death. * * *
(c) Definition↩. The phrase "in contemplation of death", as used in this section, does not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer "in contemplation of death" is a disposition of property prompted by the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized in order to determine whether or not such thought prompted the disposition.
4. In Estate of Charles W. Law,T.C. Memo. 1964-257, 23 TCM 1554, based on our holding in Estate of Laura Brown Chisholm,26 T.C. 253↩ (1956), we held a refund of income tax due with respect to decedent's taxes for the year in which decedent died to be includable in decedent's estate.